Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, REVERSES the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. Plaintiff's date of injury is July 10, 1991.
2. On that date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On that date, an employer-employee relationship existed between the plaintiff and the defendant-employer.
4. The Aetna Life Casualty Company was the compensation carrier on the risk.
5. Plaintiff's average weekly wage was $376.20, which yields a compensation rate of $250.80 per week.
***********
EVIDENTIARY RULING
Plaintiff's motion for the exclusion of Dr. Robert Elkins' testimony and Deposition (Elkins' Depo., Exhibit 1) because of exparte communications between the doctor and the defendant-employer (or the attorney representing the defendant-employer) is DENIED by the Full Commission since Dr. Elkins performed his examinations of the plaintiff as an independent medical evaluation and not as plaintiff's treating physician. The inadmissibility of testimony of a physician with whom ex parte communications have been made by an employer or his representative as set forth in Salaam v. N.C.Dept. of Transportation, 122 N.C. App. 83, 468 S.E.2d 536, disc.review allowed, 343 N.C. 514, 472 S.E.2d 20 (1996), then deemedimprovidently granted, 345 N.C. 494, 480 S.E.2d (1997); Evans v.Young-Hinkle Corp. 123 N.C. App. 693, 474 S.E.2d 152 (1996); andCrist v. Moffat, 326 N.C. 326, 389 S.E.2d 41 (1990) appear to deal specifically with the physician/patient relationship which is created between the patient and a treating physician. The application of this line of cases to doctors performing independent medical examinations under N.C. Gen. Stat. § 97-25 is unclear and will likely be addressed by the Industrial Commission in rules governing methods of oral and written communications between an employer paying compensation benefits and medical care providers as provided in the 1997 amendment to the N.C. Gen. Stat. § 97-25.
Plaintiff's motion to exclude the deposition testimony of Dr. Robert Elkins is DENIED.
***********
Based on the competent evidence of record herein, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff began working as a table and radial arm saw operator at Champion Home Builders Co. on April 1, 1983.
2. Plaintiff completed two years of high school education and had been engaged in manual labor until the injury at issue in this matter.
3. On July 10, 1991, while cutting plywood with a table saw and placing it in a rack, the plaintiff's right foot slipped on sawdust on the floor, causing him to fall and strike his lower back.
4. After informing the defendant-employer of his injury, the defendant-employer sent the plaintiff to Dr. Williford, the company doctor for evaluation. Dr. Williford then referred plaintiff to Dr. Anthony G. Hucks-Folliss who examined plaintiff on July 15, 1991 and opined that he "felt that he had strained his back and I labeled him as having an acute lumbar strain. But I also suggested that he may well have a herniated disc of either of the two lower lumbar discs in the spine."
5. Defendants accepted liability for this claim on an I.C. Form 21 agreement which was signed July 23, 1991 and approved by the Industrial Commission September 10, 1991.
6. Plaintiff attempted to return to work July 11, 1991, but complained of being incapable of performing his duties and had to leave work.
7. On July 25, 1991, Dr. Hucks-Folliss diagnosed plaintiff with a herniated disc at the L4-5 level, for which surgery was recommended. Thereafter, Dr. Hucks-Folliss performed surgery to remove the disc on October 30, 1991.
8. The plaintiff was authorized to remain out of work between July 25, 1991 and February 16, 1992, with Dr. Hucks-Folliss releasing him to return to work on February 17, 1992.
9. Plaintiff was given a 10% disability rating to his back by Dr. Hucks-Folliss, and continued to perform his regular duties of constructing counter tops until August of 1993.
10. In April and August of 1993, plaintiff complained of pain in his lower back and numbing of his left leg and foot, causing him to become incapable of working a second time on August 10, 1993. The parties executed an I.C. Form 26 Supplemental Memorandum of Agreement as to payment of compensation wherein the defendants agreed to pay additional temporary total disability to plaintiff for necessary weeks. This agreement was approved by the Industrial Commission on January 4, 1994.
11. On October 29, 1993, Dr. Hucks-Folliss performed a second surgery on plaintiff's back to remove scar tissue which had developed since the prior procedure, and recommended that plaintiff not return to work. He determined that plaintiff was permanently and totally disabled from returning to work as of August 9, 1993.
12. Plaintiff has not attempted to return to work for the defendant-employer since leaving on August 9, 1993, prior to his second surgery, even though the pain and numbness in his left leg diminished considerably following his second surgery, according to Dr. Hucks-Folliss.
13. Beginning on May 30, 1994, plaintiff met with Tony Bishop of Comprehensive Rehabilitation Associates, Inc. for vocational rehabilitation and job search.
14. In May of 1994, plaintiff complained of pain in his lower back and legs. He reported discomfort in his back after sitting for extended periods, but stated that changing positions relieved the pain. Despite plaintiff's complaints of his not being able to drive for long distances, he has continued to operate his pick-up truck and has continued to engage in recreational gardening.
15. In June of 1994, plaintiff's treating physician, Dr. Hucks-Folliss, increased plaintiff's back impairment rating from 10% to an adjusted 28% overall impairment rating to the back (based on 20% rating of a 90% back).
16. In August of 1994, defendant obtained a surveillance video tape of plaintiff engaging in routine daily activities. This video depicts the plaintiff walking, entering and exiting a full-sized pick-up truck, carrying objects, and stooping over to at least 90 degrees. Plaintiff performed these activities without apparent difficulty.
17. In August, 1994, Dr. Hucks-Folliss again found that plaintiff was permanently and totally disabled from returning to employment as a result of his compensable injury and he reiterated this to Tony Bishop in a letter dated September 19, 1994 wherein he also indicated that he considered the claimant to have reached maximum medical improvement.
18. At the request of Tony Bishop at Comprehensive Rehabilitation Associates, in September of 1994, Dr. Hucks-Folliss reviewed the sweeper position available at Champion Home Builders Co. and deemed plaintiff unfit for the position because it would require the plaintiff to stand all day long.
19. In spite of Dr. Hucks-Folliss' opinion, in September of 1994, Champion Home Builders offered plaintiff a light duty position as a sweeper which plaintiff justifiably refused due to Dr. Hucks-Folliss' opinion that the job was unsuitable for the plaintiff.
20. Soon thereafter, defendant requested that Dr. Hucks-Folliss view the surveillance videotape of plaintiff, as described in paragraph 16 above, so that it might be considered in determining plaintiff's disability. Dr. Hucks-Folliss refused to view the video.
21. In November of 1994, Champion Home Builders provided Dr. Hucks-Folliss with the following brief, two-line descriptions of four duties which were proposed by defendants as alternative labor for plaintiff: "assembling paddle fans, inspecting plumbing panels, installing ceramic edging on counter tops and ground guide for units." Dr. Hucks-Folliss discussed these job descriptions with the plaintiff and, based on the two-line descriptions and his conversation with plaintiff, determined that the plaintiff was unfit to perform these tasks. All of these duties were parts of other regular positions which the defendant-employer proposed to remove from existing positions and provide as employment to plaintiff.
22. None of the positions which the defendant-employer explored with Dr. Hucks-Folliss was a regular job position offered by defendant-employer and neither of these positions was actually ever offered to the plaintiff.
23. During his deposition of April 2, 1996, Dr. Hucks-Folliss said that he was unwilling to approve of the proposed alternative jobs based upon such sketchy and incomplete descriptions of the required tasks that would be expected of the plaintiff.
24. When presented for the first time upon cross-examination in his 1996 deposition with additional hypothetical information concerning the proposed alternative positions available at Champion Home Builders, Dr. Hucks-Folliss agreed that plaintiff might be capable of performing the paddle assembly task and the task of guiding the movement of the homes into position if the job duties were consistent with those described by defendant's counsel.
25. Dr. Hucks-Folliss' August, 1993 and September, 1994 opinions that plaintiff was "permanently disabled" were based upon the physical restrictions resulting from plaintiff's injuries and plaintiff's other non-work related conditions of arthritis, chronic shoulder bursitis, numbness in his left arm, depression, hypertension, and obesity. Although Dr. Hucks-Folliss has opined that these non-work-related conditions by themselves would render the plaintiff incapable of performing the jobs proposed by defendants, he also opined that the plaintiff is permanently and totally disabled from resuming any form of employment based solely upon his compensable work-related injury.
26. Dr. Hucks-Folliss requested that Ms. Patti Cox, Physical Therapist, at Central Carolina Hospital, perform a Functional Capacity Evaluation of plaintiff.
27. On May 5, 1994, plaintiff underwent a Functional Capacity Evaluation (F.C.E.), including a Blankenship System Behavioral Profile, under Ms. Cox's supervision. The entire session lasted 3 hours, 15 minutes.
28. Based upon the plaintiff's performance in the F.C.E., Ms. Cox found indication of submaximal effort, symptom exaggeration and inappropriate illness behavior. Her records state that plaintiff "exhibited Symptom Exaggeration and Inappropriate Illness Behavior and he failed 65% of his Validity Criteria, giving him an invalid Validity Profile, indication submaximal effort."
29. Based upon the plaintiff's performance in the F.C.E., Ms. Cox concluded that he was capable of performing at the light physical demand level.
30. The defendant-carrier, Aetna Life Casualty, retained Dr. Robert Elkins to perform an Independent Medical Evaluation of plaintiff on October 10, 1994.
31. Dr. Elkins completed a comprehensive analysis and examination of plaintiff, including review and consideration of plaintiff's medical treatment received under the care of Dr. Hucks-Folliss, the results of the Functional Capacity Evaluation performed by Ms. Patti Cox, notes from Tony Bishop, and the videotape footage obtained by defendant.
32. In his records, Dr. Elkins noted that, while plaintiff has objective findings consistent with the degenerative condition of his back, the videotape shows that plaintiff "bent over with ease to 90 degrees, stooped and reached, and twisted with no apparent difficulty."
33. Dr. Elkins' report further noted that plaintiff displayed ". . . hypersensitivity to the lightest touch, which is out of proportion to the stimulus provided, . . ." and "just about all of his findings indicate marked symptom magnification."
34. Dr. Elkins concluded that plaintiff should be given the restrictions applicable to anyone having undergone two laminectomies at one level. He opined that plaintiff could return to work with the following restrictions: no repetitive stooping, squatting or bending; weight lifting restrictions of 20 pounds occasionally and 10 pounds frequently; and work in the light to moderate categories.
35. As a result of his comprehensive examination of plaintiff and considering all of plaintiff's records, medical history and the video surveillance, Dr. Elkins rated plaintiff as having a 10% permanent physical impairment to the spine for his L4-5 disk herniation.
36. Dr. Elkins performed a second Independent Medical Evaluation of plaintiff on February 2, 1996. In his opinion, the results of the second examination merely confirmed the results of the October 10, 1994 examination. Dr. Elkins concluded that plaintiff was exaggerating his symptoms, had a poor attitude toward returning to work, and was "a poor candidate for rehabilitation".
37. Defendants have proven that plaintiff may have regained wage-earning capacity by October 10, 1994, and that the defendant-employer may be able to make reasonable accommodations to existing jobs to make a job available within plaintiff's physical restrictions at their place of employment. However, the defendants have not proven by the greater weight of the evidence that plaintiff was offered suitable employment which he unjustifiably refused or that the job they say they could make available to plaintiff was a job that is readily available in the competitive marketplace. As of the date of the hearing before the deputy commissioner, March 1, 1996, Dr. Hucks-Folliss, plaintiff's treating physician, had not approved any jobs or job duties submitted by the defendants and defendants had not offered plaintiff a job. Dr. Hucks-Folliss' opinion that plaintiff might be capable of performing the paddle assembly task and the task of guiding the movement of the homes into position was first offered at his deposition after the hearing and was contingent upon being presented an actual job description consistent with defendants' hypothetical.
38. In light of the other evidence presented, including the underlying basis given by Dr. Hucks-Folliss for his opinion on the extent of plaintiff's disability, no weight is accorded the opinion of Dr. Hucks-Folliss that plaintiff is permanently and totally disabled.
39. As a result of his admittedly compensable injuries, plaintiff continues to be temporarily totally disabled and is entitled to ongoing compensation.
40. As a result of his work injury, plaintiff is in need of future medical care and treatment and vocational rehabilitation services.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. After the Industrial Commission approves an I.C. Form 21 agreement for payment of compensation, a presumption of disability attaches in favor of the employee. The burden is upon the defendants to show that plaintiff is capable of returning to work in the competitive job market, that plaintiff has the ability to earn wages equal to or greater than what he earned at the time of his compensable injury, that suitable employment is available to the plaintiff, and that plaintiff is capable of getting one of these jobs, taking into account both physical and vocational limitations. Kisiah v. W.R. Kisiah Plumbing, Inc., 124 N.C. App. 72,476 S.E.2d 434 (1996); Saums v. Raleigh Community Hospital,346 N.C. 760, 487 S.E.2d 746 (1997). N.C. Gen. Stat. § 97-29.
2. Although the defendants have shown that plaintiff may be physically capable of returning to restricted or sedentary work, they have not shown that they offered plaintiff suitable employment, that plaintiff refused suitable employment, that the job duties they say they can pull together to create a job for plaintiff would be the type of job that is regularly offered in the competitive job market, or that plaintiff has regained pre-injury wage-earning capacity. Defendants have failed to rebut plaintiff's presumption of continuing disability. Kisiah v. W.R.Kisiah Plumbing, Inc., 124 N.C. App. 72, 476 S.E.2d 434 (1996);Saums v. Raleigh Community Hospital, 346 N.C. 760,487 S.E.2d 746 (1997). N.C. Gen. Stat. § 97-29.
3. In addition to plaintiff's first period of disability for which he has been compensated pursuant to an I.C. Form 21 agreement, plaintiff is entitled to temporary total disability compensation benefits at the rate of $250.80 per week for the time period beginning August 10, 1993 through the date of hearing and continuing. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendant provide all medical compensation reasonably necessary as a result of his compensable injury to the extent it tends to effect a cure, give relief or lessen his disability. Plaintiff must comply with reasonable vocational rehabilitation services of the defendant. N.C. Gen. Stat. §§ 97-25; 97-2(19).
5. The issue of what amount of permanent partial disability compensation (if any) is due the plaintiff shall be RESERVED for subsequent determination.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. In addition to compensation already paid to plaintiff prior to August 10, 1993, defendants shall pay plaintiff, temporary total disability, compensation at the rate of $250.80 per week for the period beginning August 10, 1993 and continuing until defendant-employer obtains permission from the Commission to cease such compensation. Defendants are entitled to a credit for temporary total disability compensation paid to plaintiff since August 10, 1993, if any. Plaintiff shall cooperate with any reasonable vocational rehabilitation provided by the defendant-employer.
2. An attorney's fee in the amount of 25% of the Award is hereby approved for plaintiff's counsel, payable as follows: 25% of any accrued amount shall be deducted and paid directly to plaintiff's counsel; thereafter, plaintiff's counsel shall receive every fourth check.
3. Defendant shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of his compensable injury when bills for same have been submitted to defendant and approved pursuant to procedures established by the Commission.
4. Defendants shall pay the costs, including expert witness fees in the amount of $265.00 to Dr. Anthony Hucks-Folliss and $155.00 to Dr. Robert W. Elkins.
***********
ORDER
Plaintiff is herewith ORDERED to cooperate with any reasonable vocational rehabilitation services provided by defendant-employer. N.C. Gen. Stat. § 97-25.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________ LORRIE L. DOLLAR DEPUTY COMMISSIONER