The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the evidence, the Full Commission REVERSES the decision of the deputy commissioner and enters the following Opinion and Award.
 RULINGS ON EVIDENTIARY MATTER
The Deputy Commissioner's ruling on the defendant's objection to plaintiff's attorney's ex-parte contact with the plaintiff's treating physician is REVERSED and the Deputy Commissioner's Order striking the testimony of Dr. Mark Warburton is HEREBY VACATED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times an employment relationship existed between the plaintiff and the defendant-employer.
3. The Travelers Insurance Company is the compensation carrier on the risk.
4. Plaintiff's average weekly wage as set forth on the Form 22 wage chart is $305.24, which yields a compensation rate of $201.51 per week.
5. Plaintiff is alleging an occupational disease which occurred on or about April 1, 1994, resulting in deQuervain's tenosynovitis in both wrists.
6. The defendant-employer has denied liability.
7. The issues to be determined by the Full Commission are:
 (1) Does plaintiff suffer from a compensable occupational disease,
 (2) Should Dr. Mark J. Warburton's deposition testimony be excluded because of a non-consensual ex parte discussion between doctor and plaintiff's counsel just prior to the deposition.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission rejects the findings of fact of the deputy commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, the plaintiff was thirty-three years old, a high school graduate and the mother of three children ages 17, 14, and 7.
2. Plaintiff has been employed since 1990 as a warehouse worker in defendant Cema's Greensboro distribution center, a facility that ships albums, CD's, and cassette tapes to retail stores. From the start, plaintiff was assigned to the Order Fulfillment Department. Beginning in June 1993, she worked almost exclusively as an order picker. As an order picker, plaintiff used her thumb and index finger to pick up one to eight CDs or cassette tapes at a time from bins or carousels and place them in cardboard cartons or "jiffy bags." Once plaintiff had contributed her part of the order to the carton, she used the thumbs and index fingers of both hands to grasp the flaps of the cardboard cartons and move them to the next location. The cartons varied in weight from very little to 17-20 pounds. She had to move approximately 200 to 300 cartons each day using her thumbs and index fingers.
3. Plaintiff began to experience numbness in her hands in 1993. She consulted the Health and Hygiene Clinical Evaluation Center in Greensboro, but continued to work. On April 12, 1994, hand numbness forced her to visit the emergency room at High Point Regional Hospital. The doctor limited plaintiff to modified duty with no lifting with her right hand for one week and referred her to High Point Orthopedic and Sports Medicine.
4. Dr. Mark Warburton, an orthopedic surgeon at High Point Orthopedic and Sports Medicine, began treating plaintiff on April 20, 1994. Based on his examination of her right arm, Dr. Warburton concluded that plaintiff had "classic deQuervain's tenosynovitis." This condition causes pain and swelling and an inability to move the thumb fully. Dr. Warburton injected plaintiff with Xylocaine and Dalalone, prescribed anti-inflammatories and recommended use of a splint. He also restricted plaintiff to light duty.
5. Because of her right-hand condition, plaintiff performed light duty through April 21, 1994 when she was forced to stop work because CEMA no longer made light duty work available. She returned to work on May 8, 1994.
6. After returning to her duties, plaintiff sought treatment from Dr. Warburton with respect to her left hand. Dr. Warburton concluded that she was suffering deQuervain's tenosynovitis on the left side as well. After conventional treatment with anti-inflammatories and a splint failed to correct plaintiff's left hand condition, Dr. Warburton recommended surgery and removed plaintiff from work.
7. Dr. Warburton performed surgery on plaintiff's left wrist on August 5, 1994. On September 15, 1994, because of continued problems with the right thumb, the same surgical procedure was performed on plaintiff's right wrist.
8. Plaintiff returned to work on October 17 and 18, 1994, but because of a flare-up in her right wrist, Dr. Warburton removed her from work, from October 20, 1994, through December 5, 1994.
9. Dr. Warburton determined that plaintiff suffered from deQuervain's tenosynovitis in both her right and left wrists; that this condition was caused by plaintiff's work; and that employees performing plaintiff's job "would have higher instances of deQuervain's tenosynovitis than the general population.
10. Dr. Warburton's opinions on "causation" and "increased risk" were based on the repetitive nature of plaintiff's work as revealed by the employer's videotape of the job and not on whether the job was fast-paced. Dr. Warburton also took into consideration that plaintiff did the same duties over and over and more importantly, the fact that she had to pinch or grasp to lift these cassettes over and over again throughout the day, thereby applying pressure between the thumb and the index finger and the long finger over and over again.
11. Since April, 1994, plaintiff has suffered from deQuervain's tenosynovitis of the right wrist. Plaintiff's use of her right arm in her work in the defendant-employer's Order Fulfillment Department caused the right deQuervain's tenosynovitis treated by Dr. Warburton beginning April 20, 1994. DeQuervain's tenosynovitis occurs when the tendons in the first dorsal compartment of the wrist becomes swollen and causes pain. This type of tendinitis or deQuervain's tenosynovitis is a tenosynovitis. It is thus a tenosynovitis caused by trauma in the employment and a compensable occupational disease under N.C. Gen. Stat. § 97-53(21) of the Workers' Compensation Act.
12. Since June, 1994, plaintiff has suffered from deQuervain's tenosynovitis of the left wrist. Plaintiff's use of her left arm in her work in the defendant-employer's Order Fulfillment Department caused the left deQuervains' tenosynovitis treated by Dr. Warburton beginning June 8, 1994. Plaintiff's tenosynovitis was caused by trauma in the employment and is a compensable occupational disease under N.C. Gen. Stat. § 97-53(21) of the Workers' Compensation Act.
13. Plaintiff's work for the defendant-employer in its Order Fulfillment Department placed her at a greater risk of developing deQuervain's tenosynovitis than members of the general public at large not engaged in this occupation. Plaintiff's bilateral deQuervain's tenosynovitis is due to causes and conditions characteristic of and peculiar to her employment and is not an ordinary disease of life to which the public is equally exposed outside of this employment. Plaintiff's bilateral deQuervain's tenosynovitis is also a compensable occupational disease under N.C. Gen. Stat. § 97-53(13) of the Workers' Compensation Act.
14. As a result of the bilateral deQuervain's tenosynovitis, plaintiff was unable to earn wages in her employment with the defendant-employer or in any other employment from April 21, 1994 through May 10, 1994; July 29, 1994 through October 17, 1994; and from October 20, 1994 through December 5, 1994. Plaintiff was temporarily totally disabled and entitled to workers' compensation for temporary total disability at the rate of $203.51 per week during these periods.
15. As a result of her surgeries, plaintiff has scars on the right and left wrists. The scars are about 1 1/2 to 2 inches in length. Each scar is 1/4 to 1/3 inch in width and is raised and discolored. The scars are noticeable from a distance of ten to twenty feet. Other persons have made comments to plaintiff with respect to these scars.
16. Plaintiff's average weekly wage is $305.24, yielding a compensation rate of $203.51.
17. Plaintiff's deQuervain's tenosynovitis has reached maximum medical improvement. Plaintiff retains a 2% permanent partial disability to each of her thumbs as a result of these conditions. Plaintiff is entitled to compensation for this permanent partial disability at the rate of $203.51 per week for three (3) weeks. N.C. Gen. Stat. § 97-31(1).
18. The treatment of the High Point Regional Hospital emergency room and Dr. Mark Warburton provided relief and lessened plaintiff's disability from her bilateral deQuervain's tenosynovitis. Defendants are obligated to pay all medical expenses which have been incurred or may be incurred in the future as a result of plaintiff's occupational disease, including the expense of Dr. Warburton's surgery.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Tenosynovitis caused by trauma is an occupational disease. N.C. Gen. Stat. § 97-53 (21). Plaintiff has proven by the greater weight of the evidence that she contracted tenosynovitis as a result of her work with the defendant-employer and that the repetitive trauma to her hands and wrists was caused by the pressure applied when grasping and lifting items repeatedly while working. Plaintiff's tenosynovitis is compensable.
2. In the alternative, the plaintiff contracted bilateral deQuervains tenosynovitis due to causes and conditions characteristic and peculiar to her employment. Plaintiff's bilateral deQuervains tenosynovitis is not an ordinary disease of life to which the general public is equally exposed and thus an occupational disease. Plaintiff became disabled due to her occupational disease beginning April 21, 1994. N.C. Gen. Stat. § 97-53(13).
3. As a result of plaintiff's compensable occupational disease, defendant-employer is obligated to pay plaintiff temporary total disability compensation benefits at the rate of $201.51 for the following periods: April 21, 1994 through May 10, 1994; July 29, 1994 through October 17, 1994; and from October 20, 1994 through December 5, 1994. Defendant is entitled to a credit for the short term disability payments plaintiff received during this period. N.C. Gen. Stat. §§ 97-30, 97-42.
4. As a result of plaintiff's compensable occupational diseases, plaintiff is entitled to permanent partial disability benefits at the rate of $201.51 per week for one and one half (1 1/2) weeks for a two percent (2%) permanent partial impairment to the right thumb and permanent partial disability benefits at the rate of $201.51 per week for one and one half (1 1/2) weeks for a two percent (2%) permanent partial impairment to the left thumb, as assigned by Dr. Warburton on December 5, 1994. These sums have accrued and shall be paid in a lump sum. N.C. Gen. Stat. § 97-31.
5. As a result of the compensable right and left thumb injuries, the defendant is obligated to pay for plaintiff's medical expenses incurred or to be incurred in the future to the extent that such treatment tends to effect a cure, provide relief or lessen plaintiff's disability when bills for the same have been submitted through the defendant and approved according to procedures adopted by the Industrial Commission. N.C. Gen. Stat. § 97-25.
6. The recent Court of Appeals case Salaam v. NorthCarolina Department of Transportation, 122 N.C. App. 83,468 S.E.2d 536 (1996) prohibits non-consensual ex parte communication between the defendant and the plaintiff's treating physician in an adversarial proceeding. This rule does not apply to the instant case as the conversation at question in this matter occurred between counsel for plaintiff and plaintiff's treating physician. The Full Commission concludes that the communication between plaintiff's counsel and plaintiff's treating physician was not of the type barred by Salaam; therefore, the deposition of Dr. Warburton is admitted into evidence herein.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For her temporary total disability, plaintiff is entitled to temporary total disability compensation at the rate of $201.51 per week from April 21, 1994 through May 10, 1994; July 29, 1994 through October 17, 1994; and from October 20, 1994 through December 5, 1994. Such compensation as has accrued shall be paid in a lump sum subject to an attorney's fee hereinafter approved; however, defendants shall be entitled to a credit for short term disability payments received by the plaintiff under an employer-funded disability policy.
2. Subject to a reasonable attorney's fee herein approved the defendants shall pay permanent partial disability benefits to the plaintiff at the rate of $201.51 per week for one and one half (1 1/2) weeks for the two percent (2%) permanent partial impairment rating to the right thumb and permanent partial disability benefits at the rate of $201.51 per week for one and one half (1 1/2) weeks for the two percent (2%) permanent partial impairment rating to the left thumb which is causally related to plaintiff's initial April 1, 1994 occupational disease. These sums have accrued and shall be paid in a lump sum.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph one and two of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the lump sum due plaintiff under paragraph one of this Award shall be deducted from that sum and paid directly to plaintiff's counsel.
4. Defendant shall pay all reasonable medical expenses incurred or to be incurred in the future by plaintiff as a result of her compensable bilateral deQuervains tenosynovitis when bills for the same have been submitted through the defendant and approved according to procedures adopted by the Industrial Commission.
5. Defendants shall pay the costs due this Commission, including deposition costs.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________ LAURA K. MAVRETIC COMMISSIONER
BSB:md