KENZIE SALAAM, Plaintiff-Appellant v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Defendant-Appellee

No. COA95-425

(Filed 19 March 1996)

### 1. Workers' Compensation § 339 (NCI4th)— permanent partial disability—I.C. Form 26 not fundamentally unfair

There was no merit to plaintiff's contention that the Industrial Commission should not have approved I.C. Form 26 giving plaintiff 30 weeks of 10% permanent partial disability compensation pursuant to N.C.G.S. § 97-31 because it was fundamentally unfair, since the record established that plaintiff was assigned a ten percent permanent partial disability of his back, but there was no evidence in the medical records submitted to

the Commission with I.C. Form 26 which supported awarding permanent total disability benefits under N.C.G.S. 97-29.

**Am Jur 2d, Workers' Compensation §§ 381, 382.**

**Back injury or condition as constituting total or permanent disability within insurance coverage. 23 ALR3d 1108.**

**What constitutes permanent or total disability within coverage of insurance policy issued to physical laborer or workman. 32 ALR3d 922.**

**Excessiveness or adequacy of damages awarded for injuries to back, neck, or spine. 15 ALR4th 294.**

2. **Workers' Compensation § 372 (NCI4th)— nonconsensual ex parte contact with employee's treating physician—deposition inadmissible**

The Industrial Commission erred by admitting the deposition of plaintiff's treating physician in light of the nonconsensual *ex parte* contact between defendant's counsel and the physician.

**Am Jur 2d, Workers' Compensation § 602.**

**Discovery right to ex parte interview with injured party's treating physician. 50 ALR4th 714.**

Appeal by plaintiff from Opinion and Award of the North Carolina Industrial Commission filed 3 November 1994. Heard in the Court of Appeals 25 January 1996.

*Donaldson & Horsley, P.A., by Kathleen G. Sumner, for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Elisha H. Bunting, Jr., for defendant-appellee.*

MARTIN, Mark D., Judge.

Plaintiff Kenzie Salaam (Salaam) appeals from Opinion and Award entered by the North Carolina Industrial Commission (Commission) denying Salaam's claim for additional compensation based on an alleged change of condition.

On 30 June 1988 Salaam, while employed with defendant North Carolina Department of Transportation (NCDOT), suffered an injury

SALAAM v. N.C. DEPT. OF TRANSPORTATION

[122 N.C. App. 83 (1996)]

to his back arising out of, and in the course of, his employment. On 24 August 1988 the Commission approved I.C. Form 21, Agreement for Compensation for Disability, submitted by NCDOT and Salaam.

On 30 January 1989 Salaam underwent surgery on his back. After surgery Dr. William L. Pritchard, Salaam's surgeon, rated Salaam with a ten percent permanent partial disability of the back. On 25 July 1989 the Commission approved I.C. Form 26, Supplemental Memorandum of Agreement as to Payment of Compensation, submitted by the parties. Under the terms of I.C. Form 26, Salaam received thirty weeks of ten percent permanent partial disability compensation pursuant to N.C. Gen. Stat. § 97-31.

Salaam subsequently requested a hearing for additional benefits under N.C. Gen. Stat. § 97-47. In the course of the attendant discovery process, the parties deposed Dr. Pritchard. Prior to the deposition, NCDOT's counsel engaged in an *ex parte* conversation with Dr. Pritchard. At the deposition, Salaam's counsel objected to the entire proceeding based on, among other things, the alleged inappropriate nature of the *ex parte* conversation.

On 15 December 1993 Deputy Commissioner Scott M. Taylor, after considering all the evidence, including Dr. Pritchard's deposition testimony, concluded Salaam had not sustained a change of condition. Salaam appealed to the Full Commission which also admitted Dr. Pritchard's deposition testimony. On 3 November 1994 the Full Commission filed an Opinion and Award finding "[o]n September 19, 1991 plaintiff returned to Dr. Pritchard complaining of pain. Plaintiff's physical condition, however, has not significantly changed since plaintiff agreed to accept ten percent permanent partial disability compensation as a result of his compensable injury on June 30, 1988." The Commission therefore concluded Salaam, since receiving a permanent partial disability rating of ten percent, "has not undergone a change of condition, and is not, therefore, entitled to additional compensation under N.C.G.S. § 97-47."

On appeal Salaam contends the Commission erred by: (1) approving I.C. Form 26 in light of the standard enunciated by the Supreme Court in *Vernon v. Steven L. Mabe Builders*, 336 N.C. 425, 444 S.E.2d 191 (1994); (2) overruling Salaam's objection to the *ex parte* communication between Dr. Pritchard and NCDOT; (3) concluding Salaam has not sustained a change of condition; (4) finding NCDOT established, assuming *arguendo* I.C. Form 26 is set aside, that Salaam is employable; (5) failing to set forth sufficient findings of fact to allow

this Court to determine the rights of the parties; and (6) finding there was "no good ground to reconsider" the previous Order and Award.

I.

[1] We first consider Salaam's allegation the Commission should not have approved I.C. Form 26 because it was fundamentally unfair.

Our Supreme Court recently· held the Commission, prior to approving any I.C. Form 26, must exercise its judicial authority by determining "the fairness of the agreement." *Vernon*, 336 N.C. at 434, 444 S.E.2d at 196. In *Vernon*, the parties submitted, and the Commission subsequently approved, I.C. Form 26, under which plaintiff received compensation for his injury pursuant to section 97-31. The medical report attached to I.C. Form 26 assigned plaintiff a fifteen percent permanent partial disability of the back, but also stated plaintiff would probably not be able to return to work. *Id.* at 434, 444 S.E.2d at 195.

The Supreme Court, relying on the attending physician's assertion plaintiff would be unable to work in the future, noted "plaintiff may have been entitled to permanent total disability benefits under section 97-29, as well as permanent partial disability benefits based on the fifteen percent rating under section 97-31." *Id.* The Court also found the approving authority assumed, rather than determined, that plaintiff understood his right to elect the most beneficial method of compensation under the Workers' Compensation Act. *Id.* at 434, 444 S.E.2d at 195-196. The Court therefore concluded the Commission failed to "act in a judicial capacity [by determining] the fairness of the agreement." *Id.* at 434, 444 S.E.2d at 196. .

In contrast, although the present record establishes Salaam was assigned a ten percent permanent partial disability of his back, we find no evidence in the medical records submitted to the Commission with I.C. Form 26 which supports awarding permanent total disability benefits under section 97-29. *See* N.C. Gen. Stat. § 97-29 (1991). In fact, Dr. Pritchard, in his letter assigning Salaam a ten percent permanent impairment, "<u>encouraged</u> [Salaam] . . . <u>to</u> <u>seek</u> <u>some</u> <u>gainful</u> <u>employment</u> within his capabilities." (emphasis added). Therefore, the present case is distinguishable from *Vernon* because Salaam, unlike the plaintiff in *Vernon*, was not entitled to benefits under section 97-29. Accordingly, we conclude the Commission appropriately exercised its judicial authority by approving I.C. Form 26 submitted by NCDOT and Salaam.

Finally, we note the Commission may set aside a previously approved I.C. Form 26 if plaintiff can establish "that there has been error due to fraud, misrepresentation, undue influence or mutual mistake . . . ." N.C. Gen. Stat. § 97-17 (1991). We believe, after careful review of the present record, that Salaam cannot establish the existence of any of these factors. *See Brookover v. Borden, Inc.,* 100 N.C. App. 754, 755-756, 398 S.E.2d 604, 605-606 (1990), *disc. review denied,* 328 N.C. 270, 400 S.E.2d 450 (1991). Accordingly, this assignment of error must fail.

II.

[2] We next consider Salaam's contention the Commission erred by overruling his objection to the *ex parte* communication between Dr. Pritchard and NCDOT.

N.C. Gen. Stat. § 97-27(b) (1991) provides, in pertinent part: "No fact communicated to or otherwise learned by any physician . . . who may have . . . examined the employee, or . . . been present at any examination, shall be privileged, either in hearings provided for by this Article or any action at law." *Id.* This proviso is considered an exception to the statutory physician-patient privilege created by N.C. Gen. Stat. § 8-53. LEONARD T. JERNIGAN, JR., NORTH CAROLINA WORKERS' COMPENSATION § 17-6 (2d Ed. 1995).

Nevertheless, "[t]he statutory physician-patient privilege is distinct from the rule prohibiting unauthorized *ex parte* contacts" and, therefore, information actually discoverable because the statutory privilege is inapplicable may be improperly acquired if done so through *ex parte* communications. *Crist v. Moffat,* 326 N.C. 326, 332-333, 389 S.E.2d 41, 45 (1990). Clearly, "the gravamen of [allowing *ex parte* contacts] is not whether evidence of plaintiff's medical condition is subject to discovery, but by what methods the evidence may be discovered." *Id.* at 336, 389 S.E.2d at 47.

In *Crist,* a medical malpractice case, the Court held "defense counsel may not interview plaintiff's nonparty treating physician privately without plaintiff's express consent" because "considerations of patient privacy, the confidential relationship between doctor and patient, the adequacy of formal discovery devices, and the untenable position in which *ex parte* contacts place the nonparty treating physician supersede defendant's interest in a less expensive and more convenient method of discovery." *Id.* In so holding, the Court assumed the statutory physician-patient privilege was waived by plaintiff.

Therefore, the *Crist* rule precludes non-consensual *ex parte* communications during adversarial proceedings.

Although we recognize "the Commission is not required to strictly apply the rules of evidence applicable to a court of law," *Tucker v. City of Clinton*, 120 N.C. App. 776, 780, 463 S.E.2d 806, 810 (1995), we likewise note the rationale of the *Crist* Court did not turn on the existence or nonexistence of an evidentiary privilege. Moreover, after careful review of the bases for the *Crist* holding—patient privacy, the confidential relationship between doctor and patient, and the adequacy of formal discovery devices—we cannot discern why these policy considerations would not be equally applicable to adversarial proceedings before the Commission. Therefore, notwithstanding the relaxed evidentiary rules applicable to the Commission, *Id.*, and the fact defendant's arguments would carry great force were we writing on a clean slate, we nonetheless are bound by *Crist*. Consequently, we must conclude the Commission erred by admitting Dr. Pritchard's deposition testimony in light of the non-consensual *ex parte* contact between NCDOT and Dr. Pritchard. *See Crist*, 326 N.C. at 336, 389 S.E.2d at 47.

Finally, we also note NCDOT, in its brief, argues Salaam suffered no prejudice by admitting Dr. Pritchard's deposition over his objection because "Salaam was allowed to question the physician about the [*ex parte*] communication and show any possible taint or bias." Although the opportunity to cure any prejudice resulting from *ex parte* communications prior to deposition is theoretically available in every adversarial proceeding, we note the *Crist* Court appears to have established a prophylactic protection against non-consensual *ex parte* communications. *See Id.* Therefore, we must reject this contention.

Accordingly, we reverse the Opinion and Award filed 3 November 1994 and remand this case to the Commission with directions to strike the deposition testimony of Dr. Pritchard and reconsider Salaam's request for additional benefits under N.C. Gen. Stat. § 97-47.

Reversed and remanded.

Judges EAGLES and MARTIN, John C., concur.