The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner W. Bain Jones, Jr. and the briefs and oral arguments on appeal. Based on its assignments of error, defendant has not shown good ground to receive further evidence or to amend the holding of the prior Opinion and Award. However, pursuant to it s authority under G.S. § 97-85, the Full Commission has reconsidered the evidence and has modified the prior Opinion and Award to award plaintiff continuing temporary total disability.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 21 November 1996 as:
 STIPULATIONS
1. All parties hereto are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer on 30 May 1995.
3. Defendant-employer was a duly-qualified self-insurer at the time of the injury.
4. Plaintiff's average weekly wage is $313.91 yielding a compensation rate of $209.28 per week.
5. Defendant accepted liability for the 30 May 1995 injury, and the parties entered into an Industrial Commission Form 21 Agreement approved by the Commission on 5 September 1995. Pursuant to the terms of that agreement, plaintiff was paid a temporary total disability compensation at a weekly rate of $209.28 from 31 May 1995, the first date that she missed from work following the injury, to 15 August 1995, the date on which she returned to work in a light-duty job in the defendant/employer's limited-duty program.
6. The parties entered into a Form 26 Agreement, which was approved by the Commission on 27 November 1995, pursuant to which plaintiff has been paid temporary partial disability benefits at various weekly rates from 15 August 1995 to the present.
7. The following medical and employment records have been stipulated into evidence: (a) 179 pages of records from Pitt County Memorial Hospital; (b) 34 pages of records from East Carolina Family Practice; (c) 29 pages of records from Pitt county Mental Health; (d) 21 pages of records from ProActive Therapy, Inc.; (e) 10 pages of records from Triangle Spine and Back Care Center; (f) 2 pages of records from Greenville MRI, Ltd.; (g) 3 pages of records from East Carolina Neurology; (h) records from East Carolina Neurosurgical Associates Incorporated Records, and; (i) twenty-four pages of records from Dr. Robert L. Rollins.
8. The issues to be determined are: (i) whether plaintiff's current condition is compensable under the Workers' Compensation Act; and (ii) if so, to what benefits is plaintiff entitled?
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff is a single mother of three and was born on 30 August 1959. Plaintiff obtained her high school diploma in 1986 and obtained a Nursing Assistant Certification at Pitt Community College along with various other certifications while employed at Pitt County Memorial Hospital.
2. On 20 July 1987, plaintiff began working for Pitt County Memorial Hospital as an Advanced Nursing Assistant and worked in the Rehabilitation Center providing general patient care.
3. On 30 May 1995, plaintiff sustained an admittedly compensable specific traumatic incident while attempting to assist a patient. As the result of this incident, plaintiff felt a pulling sensation in her lower back accompanied by the immediate onset of pain radiating down into her upper thighs.
4. Defendant admitted the compensability of plaintiff's specific traumatic incident through an Industrial Commission Form 21 Agreement for Compensation, which was approved by the Commission on 5 September 1995. Pursuant to this Form 21, plaintiff was paid temporary total disability compensation from 31 May 1995 to 15 August 1995.
5. Following the incident on 30 May 1995, plaintiff reported to defendant's Employee Health Service and was examined by Dr. Marion Swinker. Dr. Swinker diagnosed plaintiff as having sustained a lumbar sprain and released her to return to work with a twenty pound lifting restriction. Due to the fact that defendant did not have any suitable positions available at that time, plaintiff was unable to return to work for three days.
6. On 2 June 1995, Dr. Swinker revised plaintiff's restrictions to allow her to lift up to fifty pounds. Plaintiff returned to work with this restriction on 3 June 1995 and worked for three days before taking a previously planned vacation. During her vacation, plaintiff rested and attempted to recover from her injury. Following her vacation, plaintiff returned to work on 13 June 1995 and was able to work for two days before increased back pain and left leg numbness forced her to stop.
7. On 16 June 1995, plaintiff returned to Dr. Swinker who ordered an MRI. The MRI revealed mild disc bulging with some desiccation at the L4-L5 level. Dr. Swinker referred plaintiff for evaluation for placement in defendant's limited duty program and reduced her lifting restriction to twenty pounds. As of that date, defendant did not have any positions suitable for this restriction and plaintiff has not since returned to her job as a nursing assistant.
8. Plaintiff was evaluated for the limited duty program on 30 June 1995, but was not recommended for placement at that time due to her continued complaints of pain.
9. Plaintiff was examined by Dr. Michael Gwinn on 8 August 1995. At that time, Dr. Gwinn opined that plaintiff suffered from depression that may preclude her returning to work.
10. On 15 August 1995, plaintiff returned to work in defendant's Pastoral Services department for two hours a day where she essentially folded letters, stuffed envelopes, did some filing and delivered documents to other parts of the hospital. Plaintiff worked six days in this position, but was unable to continue due to constant pain and her depression.
11. Following her attempt to return to work, plaintiff was examined by Dr. Paige Fisher at the East Carolina Family Practice Center. Dr. Fisher diagnosed plaintiff with depression and noted plaintiff's frustration with her ongoing back pain.
12. On 28 August 1995, plaintiff was referred by Dr. Fisher and Dr. Bremer of the Family Practice Center, to the Pitt County Mental Health Center where she was diagnosed with mood disorder due to chronic pain and associated back injury with major depressive-like features, generalized anxiety disorder and panic disorder.
13. Plaintiff again attempted to return to work on 19 September 1995. On that date she worked for two hours but has been unable to return to work for defendant in any capacity since that date.
14. Plaintiff was last examined by Dr. Swinker on 11 October 1995, who opined that plaintiff's inability to return to work was due to her emotional condition.
15. On 18 December 1995, plaintiff was examined by Dr. Douglas Finestone who diagnosed her has suffering from fibromyalgia. Dr. Finestone found plaintiff to have a chronic pain disorder with both emotional and physical factors, along with depressive features and anxiety symptoms. Dr. Finestone began treatments for plaintiff's fibromyalgia. Since 20 June 1996, plaintiff has been treated for her fibromyalgia by Dr. Michael Nunn.
16. Plaintiff was examined in August 1996 by a psychologist, Dr. Bob Rollins, who noted that Ms. Hawkins' was suffering from pain disorder associated with psychological factors and major depressive disorder. He later confirmed the diagnosis of fibromyalgia and testified that her condition was the culmination of a chain of events that began with her back injury on 30 May 1995.
17. Plaintiff's current condition of fibromyalgia and depression manifested following and as a result of her injury by accident on 30 May 1995 and are not attributable to an independent intervening cause.
18. An Industrial Commission Form 26 Agreement for Compensation was entered into by the parties and approved by the Commission on 27 November 1995. Pursuant to this Form 26, plaintiff has been paid temporary partial disability at various weekly rates from 15 August 1995 through the present. Because the Form 26 in question awarded temporary partial disability benefits, the Commission may modify that award. To do so, the Commission does not have make a finding regarding fraud, misrepresentation, undue influence, mutual mistake or that the Form 26 was improvidently approved without a proper investigation by the Commission. Furthermore, plaintiff does not have to produce evidence of a change of condition in order to have the award modified from temporary partial to temporary total disability compensation.
19. As the result of her 30 May 1995 injury by accident and related depression and fibromyalgia, plaintiff has been unable to earn wages in her former 1995 through the present and continuing.
20. In this matter, defendant contends that the testimony of Dr. Finestone and Dr. Nunn should be stricken because of ex parte
communications between Dr. Finestone and counsel for plaintiff. However, these communications were consensual and not prohibited by the holding in Salaam v. Department of Transportation,122 N.C. App. 83, 468 S.E.2d 536 (1996), disc. review improvidentlyallowed, 345 N.C. 494, 480 S.E.2d 51 (1997). Nor were these communications in any way otherwise improper. Therefore, the Deputy Commissioner's ruling on this issue to deny defendant's was proper.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant in the form of a specific traumatic incident on 30 May 1995. G.S. § 97-2(6).
2. As the direct and natural result of plaintiff's injury by accident on 30 May 1995, plaintiff developed her current conditions of depression and fibromyalgia. Id.
3. The Commission has jurisdiction to modify an award of temporary partial disability compensation paid pursuant to a Form 26 and is not required to make findings regarding fraud, misrepresentation, undue influence, mutual mistake or that the agreement was improvidently approved without a proper investigation by the Commission. G.S. § 97-17.
4. Defendant's motion to strike the deposition of Dr. Finestone and Dr. Nunn was properly denied as the communications between these physicians and counsel for plaintiff were consensual and not otherwise improper. Salaam v. Department ofTransportation, 122 N.C. App. 83, 468 S.E.2d 536 (1996), disc.review improvidently allowed, 345 N.C. 494, 480 S.E.2d 51 (1997).
5. As the result of her injury by accident on 30 May 1995 and her causally related depression and fibromyalgia conditions, plaintiff is entitled to be paid by defendant temporary total disability compensation a the rate $209.28 per week for the period of 15 August 1995 through the present and continuing until such time as she returns to work or until further order of the Commission. G.S. § 97-29.
6. Defendant is entitled to a credit on a week by week basis for the temporary partial disability compensation it has paid to plaintiff since 15 August 1995. G.S. § 97-42.
7. As the result of her injury by accident the on 30 May 1995 and her causally related depression and fibromyalgia conditions, plaintiff is entitled to have defendant pay for all medical expenses incurred. G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to the credit in its favor and the attorney's fee approved herein, defendant shall pay to plaintiff temporary total disability compensation at the rate of $209.28 per week for the period of 15 August 1995 through the present and continuing until such time as plaintiff returns to work or until further order of the Commission. The amount of compensation having accrued shall be paid to plaintiff in a lump sum.
2. Defendant is entitled to a credit on a week by week basis for the temporary partial disability compensation it has paid to plaintiff since 15 August 1995.
3. Defendant shall pay for all medical expenses incurred as the result of plaintiff's 30 May 1995 injury by accident and her causally related depression and fibromyalgia conditions.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff herein is approved for counsel for plaintiff. From the amounts having accrued, this fee shall be deducted and paid directly to counsel for plaintiff with counsel for plaintiff receiving every fourth check thereafter.
5. Defendant shall bear the costs of this action.
 S/ ________________________ CHRISTOPHER L. SCOTT COMMISSIONER
CONCURRING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/ ______________________ DIANNE C. SELLERS COMMISSIONER