The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Theresa B. Stephenson and the briefs on appeal. Plaintiff waived oral arguments before the Full Commission, while defendants did appear. The Full Commission acknowledges the general proposition that the hearing officer is in the best position to determine the credibility of witnesses. Nonetheless, the Full Commission finds that the appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the entire evidence of record, including the Deputy Commissioner's first hand observations of witnesses, the Full Commission reverses the prior Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 5 December 1996, and subsequent thereto, and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit #1, as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Plaintiff suffered a compensable injury by accident arising out of and in the course of her employment with defendant-employer on 25 July 1994.
3. At the time of plaintiff's compensable injury by accident on 25 July 1994, an employment relationship existed between plaintiff-employee and defendant-employer.
4. On 25 July 1994, plaintiff earned an average weekly wage of $216.40, yielding a compensation rate of $144.27.
5. Atlantic Mutual was the carrier at risk on 25 July 1994.
6. The undersigned takes Judicial Notice of Special Deputy Commissioner Martha Lowrance's Administrative Form 24 Order, filed 28 March 1996; and an Order filed 23 July 1996 by the Executive Secretary.
7. The parties entered into a Form 21 Agreement for Compensation, which was approved by the Commission on 10 October 1994.
 *********** RULINGS ON EVIDENTIARY MATTERS
On 27 March 1997, plaintiff filed a motion to strike the testimony of Dr. Cecil Neville, obtained by deposition on 12 March 1997, pursuant to Salaam v. North Carolina Department ofTransportation, 122 N.C. App. 83, 468 S.E.2d 536 (1996). Plaintiff's basis for the motion is correspondence sent to Dr. Cecil Neville on 24 January 1996 from Sandy Smith of Crawford Health Care Management. Initially, it is noted that Dr. Neville testified he had already formulated his opinions on plaintiff prior to receipt of any correspondence from defendant's case manager nurse. Because the Full Commission finds that the Salaam
holding does not apply to the facts of this case, plaintiff's Motion to Strike is HEREBY DENIED.
The objections contained in the depositions of Dr. Neville, Dr. Richardson, Dr. Powell and Dr. Spanos are ruled upon in accordance with the applicable provisions of the law and the Opinion and Award in this case.
Additionally, defendant's motion to introduce the records of Dr. Richardson, which were generated subsequent to his deposition but prior to the Deputy Commissioner's Order for Contentions, is HEREBY GRANTED, and these records are made part of the record.
 ***********
Based upon the entire record of evidence, including the Deputy Commissioner's first hand observations of witnesses, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 25 July 1994, plaintiff was a 33 year old female employed by defendant-employer as a picker. Defendant-employer is in the business of producing women's lingerie. Plaintiff's duties included hanging bras on a mobile rack, known as a Z-truck, and moving this device to a different part of the plant. Plaintiff's job required her to climb up a ladder and get boxes of bras from the racks. Some of these boxes weighed as much as 85 pounds and plaintiff was required to stack these boxes on carts which, when filled, would contain as many as 30 of these boxes. Other boxes weighed approximately 35-40 pounds which she would have to lift on a regular basis. Plaintiff was also required to pull the Z- truck which she did in a "sideways" or "twisted" manner in order to keep the truck form running over her heels. Plaintiff used her back in connection with these twisting motions as well as in bending to get the bras off the rack.
2. On 25 July 1994 plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer when she was lifting boxes overhead.
3. As a result of her compensable injury by accident, plaintiff sustained a low back strain. Plaintiff initially sought treatment at Doctor's Urgent Care and physical therapy. Eventually, Dr. Cecil Neville, an orthopaedic surgeon, became plaintiff's treating physician.
4. The parties entered into a Form 21 Agreement on 14 September 1994, which was approved by the Commission 11 October 1994. According to the terms of this agreement, plaintiff was to be paid temporary total disability compensation from 27 July 1994 and continuing for an "unknown" period of weeks.
5. Following a period of treatments, plaintiff repeatedly attempted to return to work for defendant-employer.
6. On 18 May 1995, plaintiff attempted to return to work in her former position. Upon her attempted return to work, plaintiff earned the same amount of wages that she had prior to her injury.
7. On 30 May 1995, plaintiff sought treatment from Dr. Neville after aggravating her prior injury on 29 May 1995 while pushing a Z-truck. Dr. Neville placed plaintiff on light-duty until her return appointment on 6 June 1995.
8. On 6 June 1995, plaintiff was approved to perform her regular job at fifty percent (50%) production for two (2) weeks and then increased to seventy-five percent (75%) production for two (2) weeks.
9. During the 29 June 1995 visit to Dr. Neville, plaintiff complained of continued pain. The examination revealed some muscle spasm in the sacral gutters secondary to plaintiff's unrelated degenerative disease. Plaintiff was referred to physical therapy for three (3) days and removed from work until 5 July 1995.
10. On 5 July 1995, plaintiff returned to Dr. Neville with symptoms improved. Plaintiff was able to flex freely, there was much less tenderness and no lumbar muscle spasms were present. Plaintiff was excused from work until 10 July 1995 and also continued physical therapy. Dr. Neville also prescribed a TENS unit.
11. Plaintiff continued to improve, but Dr. Neville excused plaintiff from work until her next appointment on 14 July 1995. Plaintiff also continued physical therapy on a daily basis.
12. On 14 July 1995, plaintiff returned to Dr. Neville with increased pain. A thorough examination revealed some pain on the left side over the sacrum. At plaintiff's follow-up appointment with Dr. Neville on 17 July 1995, her condition had improved, but she still had some remaining tenderness over her sacrum.
13. Plaintiff sought treatment from Dr. Spanos on 8 June 1995. This treatment was not authorized by the carrier. Plaintiff's motion for a change in physician to Dr. Sanitate or Dr. Walsh, recommended by Dr. Spanos, was denied 4 October 1995 by Pat Benton, Chief Claims Examiner. A motion filed 13 May 1996 by plaintiff for further Medical and Rehabilitative Services was denied by Order of Tracey Weaver, Executive Secretary, filed 23 July 1996.
14. Eventually, after continued treatment, Dr. Neville approved plaintiff's return to work on 7 August 1995 with the restriction of fifty percent (50%) production. At plaintiff's request, Dr. Neville changed plaintiff's restrictions to light work on 28 August 1995.
15. Plaintiff did not return to work on 27 September 1995 due to a sick child. When plaintiff returned to work on 2 October 1995, she developed an effusion in her knee. An MRI of the knee revealed degenerative changes but no evidence of any tear or on-the-job injury due to squatting.
16. Due to plaintiff's knee condition, Dr. Neville kept plaintiff out of work from 3 October 1995 until he released her on 19 October 1995.
17. As a result of her work related injury on 25 July 1994, Dr. Neville rated plaintiff with a five percent (5%) permanent partial impairment of the back.
18. Plaintiff did not return to work for defendant-employer on 19 October 1995. As of that date, defendant-employer had two (2) positions available for plaintiff. These positions were suitable to plaintiff's restrictions as imposed by Dr. Neville.
19. Defendants continued to pay plaintiff temporary total disability following plaintiff's refusal to return to work on 19 October 1995.
20. Based upon plaintiff's failure to return to work on 19 October 1995, defendants filed an Industrial Commission Form 24 Application to Terminate Benefits. On 28 March 1996, Special Deputy Commissioner Martha Lowrance filed an Administrative Order, in which she approved the suspension of benefits effective as of 19 October 1995. According to this Order, defendants were entitled to suspend benefits until such time as plaintiff cooperated with defendants' return to work efforts.
21. After filing the Form 24, but prior to the entry of the 28 March 1996 Administrative Order, defendants terminated plaintiff's employment. Ms. Pat Fitzgerald, defendant-employer's human resource manager, testified that a letter was sent to plaintiff on 1 March 1996 informing her that her employment had been terminated as of that date. According to this letter, defendants termination of plaintiff was based in part on a note from Dr. Eddie Powell, in which he opined that plaintiff was unable to return to work.
22. At the time of plaintiff's termination, Dr. Neville was plaintiff's approved treating physician, not Dr. Powell. Despite this fact, plaintiff's termination was triggered by defendant-employer's acceptance of Dr. Powell's opinion. However, to date, defendants have not authorized any treatments provided by Dr. Powell and have consistently argued that they should not be responsible for medical expenses related to his treatments. Defendants have produced no convincing evidence to explain the contradictory manner in which they have approached Dr. Powell's treatments and his opinions.
23. Defendants' actions regarding plaintiff's termination were inconsistent with their actions regarding their Form 24, which was filed on 13 February 1996. In support of their application to terminate plaintiff's benefits, defendants contended that she had unjustifiably refused to return to work. Following the filing of their From 24, defendants continued paying temporary total disability benefits pending the Administrative Order. Then, on 1 March 1996, defendants terminated plaintiff's employment based on the note from Dr. Powell and their contention that plaintiff had used all of her leave time.
24. Plaintiff's termination occurred while the issue of whether her benefits should be terminated was pending before the Commission. Furthermore, defendants' decision to terminate plaintiff was in part based upon their estimation of her physical condition and her ability to return to work, issues still pending at that time before the Commission. Therefore, despite their efforts to justify her termination, defendants have failed to produce sufficient evidence upon which to find that that plaintiff's termination was unrelated to her 25 July 1994 injury by accident. This is true despite defendants' ultimate success in suspending plaintiff's benefits.
25. On 2 April 1996, plaintiff presented to defendant-employer with a letter indicating that she was prepared to cooperate with defendants' return to work efforts and that she was prepared to follow the employer's instructions in this regard. Plaintiff gave this note to Ms. Fitzgerald, who informed her that the employer did not have anything for her to do.
26. The next week, on 8 April 1996, plaintiff again returned to defendant-employer with an identical letter which she presented to Ms. Fitzgerald and to Mr. Robert Gates, defendant-employer's plant manager.
27. Despite the lack of a proper response by defendant-employer, plaintiff reiterated her intention to cooperated with defendants' return to work efforts on 15 April 1996 when she returned with a similar letter. Plaintiff was again informed that the employer had nothing for he to do.
28. Plaintiff repeated this procedure each week until 17 June 1996, when she was instructed not to bring the employer any more letters. Thereafter, plaintiff sent similar letters via certified mail. Eventually, plaintiff was instructed to cease this practice and to not return to the property of defendant-employer.
29. In the prior Opinion and Award, the Deputy Commissioner found that plaintiff's testimony regarding her inability to work after 19 October 1995 was not credible. This credibility finding was limited to a portion of plaintiff's testimony and did not address her testimony regarding her attempts to cooperate with defendants' return to work efforts on and after 2 April 1996.
30. Plaintiff's testimony regarding her repeated attempts to cooperate with defendants' return to work efforts is accepted as credible. Plaintiff's testimony on this issue was corroborated by the testimony of Ms. Fitzgerald. Ms. Fitzgerald testified that following the suspension of her benefits, plaintiff returned to defendant-employer's place of business on several occasions inquiring about returning to work. Ms. Fitzgerald's testimony also corroborates the fact that plaintiff brought letters to defendant-employer and that later plaintiff sent similar letters through the mail.
31. As of 2 April 1996, plaintiff attempted to fully cooperate with the return to work efforts of defendants. Therefore, plaintiff had complied with the 28 March 1996 Administrative Order as of that date.
32. Despite plaintiff's clear intention to cooperate with their return to work efforts, defendants refused to permit her to return to work. Defendants' actions in this regard were contrary to the terms of the 28 March 1996 Administrative Order. Pursuant to that Order, upon plaintiff's cooperation with defendants' return to work efforts, the suspension of her benefits was to end. The Administrative Order did not terminate plaintiff's benefits or give defendants the right to terminate her employment. To date, defendants have not reinstated benefits, nor have they permitted plaintiff to return to work.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment on 25 July 1994. G.S. § 97-2(6).
2. The 28 March 1996 Administrative Order suspended plaintiff's benefits until such time as she cooperated with defendants' return to work efforts. G.S. § 97-18.1. As of 2 April 1996, plaintiff had complied with this Order and defendants were obligated to either permit her to return to work or reinstate benefits as of that date. Id.
3. As the result of her 25 July 1994 injury by accident and defendants' actions following her compliance with the 28 March 1996 Administrative Order, plaintiff is entitled to be paid by defendants temporary total disability compensation at the rate of $144.27 per week for the period of 2 April 1996 and continuing until such time as she returns to work or until further Order by the Commission. G.S. § 97-18.1; G.S. § 97-29.
4. Defendants are entitled to a credit for the amounts of temporary total disability compensation paid to plaintiff from 19 October 1995 through 28 March 1996, the date of the Administrative Order. Id.
5. Plaintiff is entitled to have defendants provide authorized medical treatment arising from her 25 July 1994 injury by accident to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. G.S. § 97-25. Defendants are not responsible for the treatment of Dr. Powell as it was not timely authorized, or any other unapproved physician who treated plaintiff. Id.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation to plaintiff at the rate of $144.27 per week for the period of 2 April 1996 and continuing until plaintiff returns to work or until further Order of the Commission. Defendants are entitled to a credit against the compensation awarded above for the amounts of temporary total disability compensation paid to plaintiff from 19 October 1995 through 28 March 1996. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the credit for defendants and to the attorney's fee herein approved.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff is approved for counsel for plaintiff. From the amounts having accrued, and after deducting defendants' credit, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
3. Defendants shall pay all authorized medical expenses incurred by plaintiff as a result of the 25 July 1994 injury, for so long as such examinations, evaluations and treatments may be reasonably necessary to effect a cure, give relief or tend to lessen plaintiff's period of disability.
4. Defendants shall pay the costs.
 S/ ________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION:
S/ ______________________ DIANNE C. SELLERS COMMISSIONER