The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts as those reached by the Deputy Commissioner, with some modification but modifies the conclusions and holding of the Deputy Commissioner. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employer-employee relationship existed between plaintiff and defendant-employer.
3. Defendant-employer is duly self-insured.
4. Plaintiff's average weekly wage was $436.29.
5. Defendant has paid plaintiff compensation at the rate of $290.87 from December 17, 1993 through December 26, 1993, from January 25, 1994 through January 30, 1994, from February 8, 1994 through April 5, 1995 and from December 15, 1995 through the present and continuing.
6. Defendant paid plaintiff compensation at the rate of $101.81 for the week from April 6, 1995 through April 12, 1995 and $78.96 for the period of time from April 13, 1995 through April 16, 1995.
7. Plaintiff's Industrial Commission Forms 18 and 33 and defendant's Industrial Commission Form 19, 33 and 33R are stipulated into evidence. Plaintiff's medical records were stipulated into evidence. These records include: eighty pages of documentation from Kaiser Permanente; twelve pages of documentation from Resource Opportunities; seven pages from Hand and Orthopaedic Rehabilitation; four pages of documentation from Triangle Health Care Group; seventy-eight pages of documentation from Duke Medical Center; thirty-seven pages of documentation from GAB Business Services and ten pages of documentation from Rex Hospital.
8. The issues before the undersigned are: (i) the extent to which plaintiff was injured as a result of the December 15, 1993 accident giving rise to this claim; (ii) the extent to which plaintiff is entitled to additional compensation; (iii) the extent to which plaintiff is entitled to additional medical compensation; (iv) whether plaintiff refused suitable employment; and (v) whether authorized care should be transferred from Dr. Moriarity to Dr. Gwinn.
 EVIDENTIARY RULINGS
The objections raised in the depositions of Mae Van Hiatt, Deborah Springer, Karen Britt and Mark Moriarity, M.D. are OVERRULED.
Based upon Salaam v. North Carolina Department ofTransportation, 122 N.C. App. 83, 468 S.E.2d 536 (1996), disc.rev. improvidently allowed, 345 N.C. 494, 480 S.E.2d 51 (1997), plaintiff objected to the deposition of Dr. Speer and has moved to strike the transcript of that deposition from the record in his case. Defendant did engage in prohibited communications with Dr. Speer. Therefore, the transcript of Dr. Speer's deposition is HEREBY STRICKEN from the record in this case.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. In 1993, plaintiff began working as a licensed practical nurse for the defendant's Department of Health. On December 15, 1993, plaintiff was leaving work when she slipped and fell causing an injury to her right shoulder.
2. Plaintiff sought treatment from Kaiser Permanente beginning on December 16, 1993. Through referrals within that organization, plaintiff was treated by Mark Moriarity, M.D., an orthopaedic surgeon.
3. Dr. Moriarity diagnosed plaintiff as suffering from impingement syndrome of the right shoulder and operated on plaintiff's right shoulder on February 21, 1994. Plaintiff continued to treat with Dr. Moriarity's through June, 1994.
4. During the course of physical therapy of the right shoulder in April of 1994, plaintiff noted spasms in her neck after some aggressive therapy in which the therapist pulled plaintiff off a table. These spasms were in the upper right side of plaintiff's neck and were accompanied by headaches. Plaintiff had never experienced these types of symptoms prior to April, 1994 and has continued to experience them since that time. Plaintiff can control the symptoms by regulating her activity but the symptoms have never resolved.
5. As a result of the aforementioned incident and the course of physical therapy for her right shoulder in April, 1994, plaintiff sustained a permanent injury of the neck.
6. After June, 1994, plaintiff's care was transferred to Duke Medical Center where she was treated under the direction of Kevin Speer, M.D., another orthopaedic surgeon. Dr. Speer felt plaintiff continued to suffer from an impingement of the right shoulder and performed surgery on that shoulder on November 15, 1994.
7. On April 6, 1995, plaintiff returned to work for defendant in a new capacity. However, she continued to experience physical problems which were exacerbated by her new work.
8. In August and September of 1995, plaintiff continued to experience problems involving her right arm and shoulder but was unable to see Dr. Speer. In addition, plaintiff was suffering from pain in her neck, but defendant failed to authorize plaintiff to see Dr. Speer or Dr. Moriarity because defendant denied any causal relationship between plaintiff's cervical problems and her admittedly compensable injury of December 15, 1993.
9. Since Plaintiff was unable to get authorization for treatment, she consulted Joan Potter, M.D., her primary care physician under defendant's health insurance plan. Plaintiff underwent a course of treatment with Dr. Potter in August and September of 1995 which consisted of two office visits with Dr. Potter and a brief course of physical therapy. To the extent that Dr. Potter treated plaintiff for the symptoms involving her right shoulder and arm, the treatment was related to the admittedly compensable injury of December 15, 1993. To the extent that Dr. Potter treated plaintiff for symptoms involving her cervical spine, the treatment was related to the 1994 physical therapy incident.
10. Dr. Moriarity saw plaintiff in consultation on December 15, 1995 after she had received authorization to see him. At that time, Dr. Moriarity wrote plaintiff a note excusing her from work until she had a bone scan and follow-up appointment.
11. On January 10, 1996, plaintiff returned to Dr. Speer at defendant's request. Dr. Speer gave plaintiff a note to be out of work until such time as a job description could be reviewed for the plaintiff. According to Dr. Speer, he was releasing plaintiff to Dr. Moriarity's care and any job descriptions would have to be reviewed by Dr. Moriarity.
12. Deborah Springer, plaintiff's case manager, arranged for an occupational therapist to review a job which defendant claimed to have available for plaintiff. The occupational therapist suggested non-specific recommendations and modifications for that job.
13. Defendant instructed plaintiff to return to work on February 19, 1996. Plaintiff telephoned Paula Williams, her supervisor, on that date to determine if the modifications had been made pursuant to the recommendations from the occupational therapist. Ms. Williams informed plaintiff that she did not know whether the accommodations had been made and as a result, plaintiff did not return to work. Carol Tyson, of defendant's communicable disease program, acknowledged that she knew that plaintiff had requested the accommodations be made prior to returning to work.
14. The defendant offered plaintiff a job on February 19, 1996, but the job was not suitable to plaintiff's capacity in that it exceeded the limitations placed upon plaintiff's work by Dr. Moriarity. In addition, plaintiff's request that the modifications be made prior to returning to work was reasonable under the circumstances and did not amount to a refusal of acceptable suitable employment.
15. On February 21, 1996, plaintiff's counsel wrote defendant to advise that plaintiff was willing to attempt to return to work if the accommodations were made. On that day, defendant terminated plaintiff's employment for failure to report to work. Defendant-employer did not notify plaintiff or her attorney that the accommodations had been made.
16. Furthermore, given that Dr. Moriarity had written plaintiff out of work until having a bone scan and a follow-up appointment and that Dr. Speer wrote plaintiff a note to be out of work until Dr. Moriarity approved the job for her, neither of which had been done, plaintiff's failure to report to work on February 19, 1996 was justified.
17. As a result of the admittedly compensable injury by accident on December 15, 1993, plaintiff has been unable to return to work earning her pre-injury wages with the defendant or in any other employment since December 15, 1995.
18. Medical treatment plaintiff received at the direction of Drs. Speer, Moriarity and Potter was reasonably necessary to effectuate a cure, give relief or lessen the period of plaintiff's disability resulting from her compensable injury December 15, 1993.
19. Dr. Moriarty testified that he believed that the plaintiff could benefit from the use of a wheelchair even though her complaints were in her shoulder. The Full Commission does not find the use of a wheelchair to be a reasonable medical expense associated with plaintiff's compensable injury by accident to her right shoulder.
20. In 1995, plaintiff incurred $310.56 in membership fees at the YMCA in order to participate in pool therapy as recommended by Dr. Speer. This therapy was necessary to provide relief from plaintiff's compensable injury; therefore, plaintiff is entitled to be reimbursed for this expense.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has not refused suitable employment to her capacity without justification, and plaintiff's right to workers' compensation benefits is not impaired. N.C. Gen. Stat. § 97-32.
2. The cervical injury plaintiff sustained during the course of physical therapy in April, 1994 is compensable as a consequence of plaintiff's admittedly compensable injury of December 15, 1993. N.C. Gen. Stat. § 97-2(6).
3. As a result of the compensable injury of December 15, 1993, plaintiff is entitled to receive temporary total disability until defendant obtains authorization to terminate or suspend said compensation. N.C. Gen. Stat. § 97-29.
4. Defendant shall provide medical compensation associated with plaintiff's compensable injury of December 15, 1993 and the injury which occurred during the course of physical therapy in April, 1994. N.C. Gen. Stat. § 97-25.
5. By previous Order of the Full Commission, an Industrial Commission rehabilitation nurse will designate plaintiff's treating physician as Dr. Moriarity is not longer available to treat the plaintiff. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall continue to pay temporary total disability compensation at the rate of $297.87 until such time as defendant receives authorization from this Commission to terminate or suspend said compensation. This compensation is subject to an attorney's fee in paragraph three of this Award.
2. Defendant shall pay all the medical bills for medical compensation associated with plaintiff's compensable injury, including all bills for treatment received at the direction of Drs. Speer, Potter and Moriarity. In addition, defendant shall reimburse plaintiff $310.56 for the cost of the YMCA membership which she paid from her own funds.
3. A reasonable attorney's fee of twenty-five percent is approved for plaintiff's counsel. This fee shall be paid by defendant by sending every fourth check of compensation directly to plaintiff's attorney.
4. Defendant shall bear the cost.
This the ___ day of August 1998.
 S/ _______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
S/ _____________________ RENÉE C. RIGGSBEE COMMISSIONER