The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modification to Conclusion of Law Number 5, and Award Number 3.
 EVIDENTIARY RULINGS
Plaintiff's motion to strike part of Dr. Naso's testimony pursuant to Salaam v. N.C. Department of Transportation,122 N.C. App. 83, disc. rev. allowed, 343 N.C. 514
(1996), disc. rev. improvidently granted, 345 N.C. 494
(1997) on the basis of defendant-employer's ex parte
communications with Dr. Naso is denied because plaintiff's counsel stipulated to the receipt of Dr. Naso's medical records into evidence.
At the hearing, the Deputy Commissioner reserved ruling on plaintiff's objections to certain testimony by Robert Hill regarding conversations he had with Dr. Naso and Dr. Steele. These objections are now overruled to the extent the testimony was corroborated by the notes of Dr. Naso and the testimony of Dr. Steele.
All objections made by counsel in the medical depositions are ruled upon in accordance with the law and this Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the Workers' Compensation Act.
2. At all times relevant herein, the employer-employee relationship existed between plaintiff and defendant-employer.
3. The compensation carrier on the risk was Granite State Insurance Company.
4. Defendants paid plaintiff compensation for the period from 30 September 1996 through 12 November 1996 at the rate of $400.00 a week. Plaintiff returned to work on 13 November 1996.
5. The parties stipulated to the following documents:
 (a) Four Form 22 wage charts reflecting plaintiff's earnings from January 1995 to January 1997.
 (b) Medical records from Dr. Furr, Dr. Watts, Dr. Naso, Dr. Steele and Dr. Oweida.
6. Due to the loss of the tape recording of the hearing, the parties agreed that the hand-written notes of the Deputy Commissioner from the initial hearing shall constitute the transcript of testimony of lay witness.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff, who is thirty-nine years old, was employed by defendant-employer in a variety of capacities since 1980. Because of her seniority with defendant-employer, plaintiff was able to bid into any job in the plant. In November 1995, plaintiff bid into the first shift ID grinder operator job from her third shift auditor position.
2. The ID grinder operator job involves constant use of both hands at or below waist level to take three to four pound blocks from a basket to the grinder with one hand, then remove each block from the grinder with the other hand. Plaintiff's production on this job was approximately 6,000 blocks per day.
3. Within a couple of weeks of starting this job, plaintiff began to experience pain and numbness in both hands. She came under the care of Dr. H. Boyd Watts, who diagnosed bilateral carpal tunnel syndrome and instituted conservative treatment. On 10 September 1996 Dr. Stephen J. Naso assumed plaintiff's care, and shortly thereafter performed carpal tunnel releases on both hands.
4. On 20 August 1996 plaintiff came under the care of Dr. Robert Steele, an orthopedic surgeon, for an unrelated problem involving her left shoulder. Dr. Steele ruled out any problem with the AC joint, diagnosed impingement syndrome of the left shoulder, and treated conservatively with injections while plaintiff was undergoing the carpal tunnel releases with Dr. Naso.
5. On 8 November 1996 plaintiff told Dr. Steele that her hands were doing fairly well since Dr. Naso's surgery, and that her left shoulder, while still symptomatic, was not bothersome enough to warrant surgery at that time. On 12 November 1996 plaintiff returned to Dr. Naso for a follow-up. He noted that her hands were doing very well, and that her left shoulder was her major problem. With respect to plaintiff's hands only, Dr. Naso released plaintiff to light duty work.
6. On 13 November 1996 plaintiff reported to work for the defendant-employer who provided a light-duty job sweeping. The sweeping job was not a regular job at the plant, but one that was used for light duty only. It was a "make-work" job that would not have been indicative of plaintiff's earning capacity even if she could have done it. Plaintiff attempted the job for approximately an hour before advising her supervisor she could not perform the job.
7. Defendant-employer then made available another light duty job "writing tickets." This was not a regular job, but was one used for light duty; this was likewise a "make-work." Plaintiff attempted the job briefly, but reported that it was too painful and left work. She never returned to work for the defendant-employer or looked for other work. Defendant-employer never offered her appropriate light duty work.
8. On 14 November 1996 plaintiff returned to Dr. Steele, complaining that she could not perform the light duty work defendant-employer made available because her shoulder was bothering her. At plaintiff's behest, Dr. Steele performed an arthroscopy of the left gleno-humeral joint on 15 November 1996 for treatment of left shoulder impingement syndrome. Plaintiff reported no improvement in her left shoulder symptoms following that surgery.
9. On 10 December 1996 plaintiff returned to Dr. Naso, who concluded that she did not have carpal tunnel disease at that point in time, and that there was no reason she could not work light duty insofar as her hands were concerned. On her return visit 21 January 1997 Dr. Naso noted that plaintiff's hands were doing well, but she still had pain in the thenar eminence in the right hand going up to the wrist and some numbness in the fingers. Dr. Naso released her to return to her regular job, with a five percent permanent impairment rating to each hand.
10. On 24 February 1997 plaintiff came under the care of Dr. Oweida for complaints of continuing left shoulder pain. Dr. Oweida diagnosed a problem with the AC joint, and recommended further surgery involving excision of the distal clavicle. However, following this surgery, plaintiff again reported no improvement, despite a substantial amount of post-operative physical therapy and objective signs of improvement.
11. Plaintiff's employment with defendant-employer significantly contributed to her development of bilateral carpal tunnel syndrome and placed her at an increased risk of developing bilateral carpal tunnel syndrome as compared to members of the general public not so employed.
12. The medical evidence of record is insufficient to support a finding by the greater weight that plaintiff's employment with defendant-employer was a significant contributing factor to her development of the left shoulder problems or that plaintiff's employment with defendant-employer placed her at an increased risk of developing these left shoulder problems as compared to members of the general public not so employed.
13. As a result of her bilateral carpal tunnel syndrome, plaintiff was unable to earn the same wages she was earning at the time of the injury in the same or any other employment from 20 September 1996 through 12 November 1996. From 13 November 1996 until she was released to return to regular work by Dr. Naso on 26 January 1997, plaintiff's carpal tunnel syndrome allowed her to work only light duty. However, in that defendant employer never offered her appropriate light duty work, she was not able to earn her pre-injury wages with the defendant-employer or in any employment during that time. Any disability after 27 January 1997 was due solely to her shoulder problem.
14. As a result of her bilateral carpal tunnel syndrome, plaintiff retains a five percent permanent partial disability to each hand.
15. Plaintiff's average weekly wage was $771.05 on 12 January 1996.
16. Plaintiff received disability payments for a period of 25 3/7 weeks ending 18 May 1997 at the rate of $310.00 per week pursuant to a plan provided through the defendant-employer.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's bilateral carpal tunnel syndrome is an occupational disease compensable under the provisions of N.C. Gen. Stat. § 97-53(13).
2. Plaintiff's left shoulder problems are not a compensable occupational disease, inasmuch as the expert medical evidence of record was insufficient to support findings that plaintiff's employment was a significant contributing factor to her development of these problems, or that her employment placed her at an increased risk of developing these problems as compared to members of the general public not so employed. N.C. Gen. Stat. § 97-53(13).
3. As a result of her bilateral carpal tunnel syndrome, plaintiff was temporarily and totally disabled from 30 September 1996 through 26 January 1997 and is therefore entitled to compensation at the rate of $492.00 per week for that period. N.C. Gen. Stat. § 97-29. Any loss of wage earning capacity plaintiff experienced thereafter was not causally related to her bilateral carpal tunnel syndrome, and is therefore not compensable under the Workers' Compensation Act.
4. As a result of her bilateral carpal tunnel syndrome, plaintiff retains a five percent permanent partial disability to each hand, which entitles her to benefits pursuant to N.C. Gen. Stat. § 97-31(12) for a period of 20 weeks at the rate of $492.00 per week.
5. Plaintiff is entitled to have defendants provide all medical compensation relating to her bilateral carpal tunnel syndrome, subject to the limitations provided in N.C. Gen. Stat. § 97-25.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability benefits at the rate of $492.00 per week for the period from 30 September 1996 through 27 January 1997. This compensation has accrued, and shall be paid to plaintiff in a lump sum, subject to a credit for any compensation previously paid by defendants or the disability policy if it was fully funded by the defendant-employer. The amount due is also subject to the attorney fee hereinafter approved.
2. Defendants shall pay plaintiff permanent partial disability benefits at the rate of $492.00 per week for a period of 20 weeks. This compensation has accrued, and shall be paid to plaintiff in a lump sum, subject to the attorney fee hereinafter approved.
3. Defendants shall pay all medical expenses incurred by plaintiff for treatment of her bilateral carpal tunnel syndrome, subject to the limitations provided in N.C. Gen. Stat. §97-25.1, when bills for the same have been submitted to and approved by the Industrial Commission.
4. Plaintiff's attorney is entitled to a fee of 25 percent of the compensation awarded herein, which amount shall be deducted from the lump sums due plaintiff and paid directly to plaintiff's counsel.
5. Defendants shall pay the cost.
This the ____ day of March 1999.
 S/ _____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _____________ J. HOWARD BUNN JR. CHAIRMAN
S/ _____________ THOMAS J. BOLCH COMMISSIONER
DCS/bjp