In accordance with the directive of the North Carolina Court of Appeals, the undersigned find as facts and conclude as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injury which is the subject of this claim, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. At all times relevant to this claim, the employer-employee relationship existed between plaintiff and defendant.
3. Defendant was a duly qualified self-insured employer under the Workers Compensation Act at all times relevant to this claim.
***********
In accordance with the directives of the North Carolina Court of Appeals, and based upon all of the competent, credible, and convincing evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 47 years old. She was hired by defendant on 29 July 1994 as a Divisional Financial Assistant for defendants Bed and Bath Division. Plaintiffs position involved assisting the controller of mill accounting the preparation of an effective and meaningful mill accounting program. Plaintiff assisted division controllers with various financial analyses and maintained and trained other employees with respect to the PC networks and financial reporting systems. These responsibilities required that plaintiff frequently use a computer.
2. On Friday, 9 September 1994, plaintiff was typing on a keyboard at a conference room table between 8:30 a.m. and 4:15 p.m. The work station was ergonomically unsound, with the table being higher than normal. Between 1:00 p.m. and 3:00 p.m., plaintiff felt a hot sensation with sharp pains radiating down her neck. She continued to work at the keyboard for the remainder of the day in order to complete the assigned project.
3. On Saturday, 10 September 1994, plaintiff worked at the same work station from 8:00 a.m. to 3:45 p.m. She took a break and resumed work until 5:45 p.m. On Sunday, 11 September 1994, plaintiff worked at the same station from 1:30 p.m. until 8:35 p.m.
4. Plaintiff worked full days the next week from Monday through Thursday. At 2:30 p.m. on Thursday, plaintiff reported to Dr. Stephen St. Clair, defendants occupational physician, with pain in her left hand, arm, shoulder and elbow.
5. On 4 October 1994, plaintiff presented to Dr. Stephen C. Robinson of Guilford County Neurosurgical Associates, P.A. She complained of discomfort in her left shoulder and left hand and reported discoloration of the fingers following movement of her left hand. The results of Dr. Robinsons physical examination of plaintiff were normal, and he found no evidence of Raynauds phenomenon or a cervical disk problem. He stated that the etiology of her left shoulder pain was unknown, and he requested that plaintiff modify the length of time that she worked at a keyboard without a break and to reposition her arms in relationship to her body. Dr. Robinson also noted that he would arrange an MRI scan of her cervical spine if her pain did not resolve itself with changes in her work habits.
6. An MRI was taken on 18 October 1994, which revealed a herniated disk at C5-6 and some spondylosis. Thereafter, plaintiff was referred to Dr. Ernesto Botero of Guilford County Neurosurgical Associates, P.A.
7. Dr. Botero performed a cervical diskectomy and fusion at C5-6 on 28 October 1994.
8. Plaintiff returned to work with defendant on 9 January 1995.
9. Since the time of her surgery, plaintiff has experienced other medical problems for which she has been treated by numerous physicians. The problems include symptoms consistent with Thoracic Outlet Syndrome and fibromyalgia. However, none of plaintiffs physicians have been able to credibly or convincingly diagnose the cause of her multiple complaints. Plaintiff has failed to credibly or convincingly prove by the greater weight of the competent evidence that the above-described problems relate either to her cervical surgery or to a specific traumatic injury to her back.
10. Plaintiff was seen by Dr. Scott Spillmann for an independent medical evaluation. Dr. Spillmann gave plaintiff a 15% permanent partial disability rating to her back as a result of her herniated disk at C5-6.
11. On 2 June 1995, counsel for defendant wrote a letter to Dr. Botero in which she requested answers to questions regarding the causation of plaintiffs medical condition. Dr. Botero responded with short, handwritten answers. This correspondence constitutedex parte communication between defense counsel and plaintiffs physician.
***********
In accordance with the directive of the North Carolina Court of Appeals, and based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. As a result of the ex parte communication between defense counsel and Dr. Botero regarding the causation of plaintiffs medical condition, Dr. Boteros subsequent testimony on that subject is deemed impermissibly tainted and may not be considered in the resolution of plaintiffs claim. Salaam v. N.C. Dept. ofTransportation, 122 N.C. App. 83, 468 S.E.2d 536, disc. reviewimprovidently allowed, 345 N.C. 494, 450 S.E.2d 51 (1997). Accordingly, those portions of Dr. Boteros deposition in which he discussed the causation of plaintiffs condition have not been considered by the Full Commission in resolving plaintiffs claim.
2. "There must be competent evidence to support the inference that the accident in question resulted in the injury complained of, i.e., some evidence that the accident at least might have or could have produced the particular disability in question. Click v.Freight Carriers, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). "Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.Id. In this case, even excluding the causation testimony offered by Dr. Botero, plaintiff has failed to present any competent medical expert evidence that to a reasonable degree of medical certainty her condition was caused by her typing on the computer keyboard at work.
3. Due to plaintiffs failure to present competent medical testimony causally relating her condition to either an injury by accident or a specific traumatic injury to her back, plaintiff is not eligible for compensation under the Act. N.C. Gen. Stat. 97-2(6).
***********
Therefore, in accordance with the directive of the North Carolina Court of Appeals, and based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiffs claim under the law must be, and is hereby, DENIED.
2. Each side shall bear its own costs, with the exception that defendant shall pay an expert witness fee in the amount of $450.00 to Dr. Spillmann and an expert witness fee tin the amount of $500.00 to Dr. Botero.
This the day of April, 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
(Retired prior to decision) J. HOWARD BUNN, JR. CHAIRMAN