* * * * * * * * * * *
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby modifies in part and reverses in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * * EVIDENTIARY MATTERS
At the conclusion of the 12 August 2002 segment of the Deputy Commissioner hearing, plaintiff moved to compel defendant to pay for an independent medical examination by Dr. Mark W. Roy, and said Motion was granted with Dr. Roy performing an examination 9 January 2003. Also at the conclusion of the 12 August 2002 segment of the hearing, defendant moved to compel plaintiff to produce records of medical treatment received to his lower extremities prior to the injury that is the subject of this claim, said Motion was granted, and those records were produced.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At all relevant times, defendant-employer employed regularly employed three or more persons and an employment relationship existed between plaintiff-employee and defendant-employer.
2. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the Industrial Commission had jurisdiction over the parties and subject matter of this case.
3. Defendant-employer was self-insured at all relevant times, with Frank Gates Servicing Company acting as its servicing agent.
4. Defendant has paid weekly total disability compensation since 19 February 2001 at the rate of $344.00 per week, based upon an average weekly wage of $516.00. Defendant filed an Industrial Commission Form 22 Wage Chart on 12 August 2002.
5. At the hearing before the Deputy Commissioner, the parties submitted the following which were entered into the evidence of record:
a. Stipulated Exhibit 1 — Pre-Trial Agreement
 b. Stipulated Exhibit 2 — An Industrial Commission Form 22 Wage Chart
 c. Stipulated Exhibit 3 — Plaintiff's 2000 and 2001 W-2 forms
 d. Stipulated Exhibit 4 — A Termination Correspondence
e. Stipulated Exhibit 5 — Plaintiff's Medical Records
 f. Stipulated Exhibit 6 — Defendant's Internal Report of Plaintiff's 11 January 2001 injury
 g. Stipulated Exhibit 7 — Defendant's Personnel File on Plaintiff
 h. Stipulated Exhibit 8 — Plaintiff's Motion and the Commission's Order for payment of Total Disability Compensation
 i. Stipulated Exhibit 9 — Plaintiff's responses to Defendant's Discovery Requests and Plaintiff's notarized verification of same
 j. Stipulated Exhibit 10 — A Packet of Industrial Commission Forms
 k. Stipulated Exhibit 11 — Concentra's Medical Case Management File
 l. Stipulated Exhibit 12 — Defense Counsel's 1 August 2002 Correspondence to Dr. Albert K. Bartko
 m. Stipulated Exhibit 13 — Plaintiff's Unpaid Medical Bills
 n. Stipulated Exhibit 14 — Defendant's Form 24 Application, the attachments thereto, Plaintiff's Response to that application, an the Order Disapproving Defendant's Application filed on 30 January 2002
6. The issues to be determined by the Commission are whether Dr. Bartko's medical records and testimony are excluded as a result of non-consensual ex parte contact by defense counsel, and if so, whether plaintiff is entitled to an untainted physician of his choosing for future medical treatment and for all issues regarding causation; whether plaintiff is permanently and totally disabled and entitled to lifetime indemnity benefits absent a change of condition; whether the ex parte
communication of the treating physician with defendant carrier mandates prophylactic exclusion of the medical providers so tainted under Salaam; whether defendant's failure to file a Form 60, Form 63, Form 62, Form 21 or Form 26 precludes defendant from denying liability and compensability of this claim under N.C. Gen. Stat. §§ 97-18(d) and 97-82; the correct average weekly wage and resulting weekly compensation rate; whether defendant is required by the Workers' Compensation Act to continue providing plaintiff with indemnity and medical benefits; whether plaintiff is entitled to a change of treating physicians to Dr. Mark Roy, or at a minimum, a second opinion regarding treatment for plaintiff's admittedly compensable injury by accident, and; whether either party is entitled to attorney's fees and costs pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations and evidence of record, the Full Commission makes the following:
 FINDINGS OF FACTS
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was forty-nine (49) years of age, with his date of birth being 8 October 1952. Plaintiff attended high school, but cannot read.
2. Plaintiff began his employment with defendant-employer on 26 January 1998, and worked as a hose fabricator. In that capacity, plaintiff's duties required him to cut hoses and assemble hydraulic hoses.
3. On 11 January 2001, while working for defendant-employer, plaintiff sustained an injury to his back while lifting a hydraulic hose. Plaintiff also contends that he injured his left leg and left lower extremities as a result of the 11 January 2001 incident. Defendant accepted plaintiff's claim as being compensable, and began payments of indemnity and medical compensation as of 19 February 2001. Plaintiff continued to receive total disability benefits on an ongoing basis through the date of the hearing before Deputy Commissioner Houser.
4. Following plaintiff's report of injury, he was referred by defendant to Dr. Chris Guest, a general practitioner. Dr. Guest ordered an MRI of plaintiff's lumbar spine, the results of which revealed congenital neural foraminal narrowing, degenerative facet arthropathic changes, central canal stenosis, and resultant nerve root encroachment. Dr. Guest interpreted the radiologist's report as indicating that plaintiff had central canal stenosis and a resultant nerve root encroachment. Dr. Guest attempted to treat plaintiff's condition conservatively, but this treatment was not successful.
5. Upon referral by Dr. Guest, plaintiff was next examined by Dr. Randy O. Kritzer, a neurosurgeon, on 13 March 2001. On that date, plaintiff reported that his back pain had essentially resolved, but that he continued to experience left leg numbness that began approximately two months earlier. After reviewing the earlier MRI, Dr. Kritzer opined that plaintiff had chronic degenerative spine conditions, with no acute abnormalities. A myelogram ordered by Dr. Kritzer revealed results similar to those from the MRI, and Dr. Kritzer further opined that plaintiff had spondylosis, or arthritic changes in his spine. On 11 April 2001, Dr. Kritzer recommended that plaintiff undergo epidural steroid injections which were administered on 23 April 2001 and 2 May 2001. On 8 May 2001, Dr. Kritzer released plaintiff from his care because he did not believe plaintiff was a surgical candidate, and because plaintiff declined additional conservative treatment. At his deposition, Dr. Kritzer was unable to testify to a reasonable degree of medical certainty regarding any causal relationship between plaintiff's left leg and left lower extremity complaints and his back injury of 11 January 2001.
6. The rehabilitation nurse assigned to plaintiff was Ms. Sue Killmond. Subsequent to plaintiff being released by Dr. Kritzer, Ms. Killimond recommended, and plaintiff requested, that Dr. Donald Hertweck be designated as his primary treating physician. Defendant accepted this recommendation, and authorized treatments with Dr. Hertweck, who was also to provide a second opinion regarding plaintiff's neuropathy. Dr. Hertweck initially examined plaintiff on 28 June 2001, at which time plaintiff reported that his back pain had resolved, but that he was experiencing left foot pain, and a heaviness or numbness type sensation in that foot. In his records, Dr. Hertweck noted that he could not correlate plaintiff's left leg and left lower extremity symptoms to any definitive medical cause, but that these may be related to his back injury.
7. On 9 July 2001, plaintiff was examined by Dr. Albert K. Bartko, III, a physician board certified in physical medicine and rehabilitation. At this initial examination, plaintiff reported that his low back pain had resolved, but that he continued to experience pain on the front of his left thigh, at the front of his left knee, and on the front of his calf. Plaintiff also reported an increase in symptoms while walking or sitting, and ataxia, a condition that Dr. Bartko explained was a compromised sense of balance possibly due to plaintiff's left leg and left lower extremity symptoms. Dr. Bartko noted that plaintiff's medical records indicated that he had central canal stenosis at L3-4 through L5-S1, and moderate to severe central canal stenosis and suggested congenitally small canal with superimposed bulging discs. Based upon his review of plaintiff's records, Dr. Bartko opined that plaintiff did not have a herniated disc, but did have a small spinal canal resulting from congenital and degenerative conditions. Following his own examination of plaintiff, Dr. Bartko opined that any causal connection between plaintiff's left leg and left lower extremity symptoms and his 11 January 2001 back injury would be problematic given the radiographic studies and the resolution of plaintiff's low back pain. Because of his findings, Dr. Bartko counseled plaintiff regarding the possibility that a medical condition independent from the 11 January 2001 incident was the cause of his left leg and left lower extremity symptoms. Following the 9 July 2001 examination, Dr. Bartko recommended electro-diagnostic studies of plaintiff's left lower extremities to rule out the necessity of surgery to correct the spinal condition. Additionally, Dr. Bartko recommended physical therapy, prescribed Ambien to help plaintiff sleep and a TENS unit for pain control. Dr. Bartko also assigned work restrictions, limiting plaintiff's work to sedentary or light duty, with no lifting more than fifteen (15) pounds occasionally, and no repetitive bending, twisting, or squatting.
8. Plaintiff was next examined by Dr. Bartko on 31 July 2001, at which time plaintiff reported no change in his left leg and left lower extremity symptoms, and no recurrence of back pain. On 6 August 2001, the electro-diagnostic studies ordered by Dr. Bartko were conducted. On 9 August 2001, plaintiff returned to Dr. Bartko to review the test results. According to Dr. Bartko, the tests revealed a "total absence of limb findings" and mild polyradiculopathy in plaintiff's lower back. Regarding these test results for plaintiff's back, Dr. Bartko testified that plaintiff's polyradiculopathy was present at the same levels on each side of his back, and for that condition to be a cause of his left leg or left lower extremity symptoms, plaintiff would have to be experiencing similar symptoms on the right side as well as the left. Dr. Bartko also testified that these test results were typical for patients having spinal stenosis and diabetes.
9. Regarding plaintiff's symptoms on of 9 August 2001, plaintiff denied experiencing back pain, and reported pain in the back of his left thigh and calf, which Dr. Bartko noted was different than reports of pain during prior examinations. Also, plaintiff reported that his symptoms were constant and denied any exacerbating factors, although he had previously reported that his symptoms did change with sitting, standing, and walking. As of 9 August 2001, Dr. Bartko opined that plaintiff's left leg and left lower extremity symptoms could be caused by an occult polyradiculopathy due to his central canal stenosis, a post-stroke pain syndrome, or an undetermined vascular condition. Dr. Bartko then ordered an arterial doppler study and a veinous duplex study to rule out post-stroke syndrome and other circulatory conditions as possible causes of plaintiff's left leg and left lower extremity symptoms.
10. Pursuant to Dr. Bartko's recommendation, plaintiff began physical therapy three times per week beginning on 18 July 2001 at Southeastern Orthopedic Specialists Sports Medicine Center. To his therapists, plaintiff reported he was not experiencing back pain, but that was experiencing left lower extremity pain, intermittent foot swelling, along with decreased feeling and strength in his left lower extremities. Plaintiff continued physical therapy through 14 August 2001, at which time the therapy was discontinued due to lack of progress.
11. On 26 September 2001, plaintiff returned to Dr. Bartko, and reported the recurrence of back pain beginning three (3) weeks earlier. Plaintiff also reported that he was not experiencing radiating pain into his left leg or numbness, tingling, or weakness, and that he had not experienced any new injury. Following his examination, Dr. Bartko noted that plaintiff's physical condition was normal, except for tenderness in the upper lumbar region of his back. Based upon this examination and his medical history, Dr. Bartko opined that plaintiff's left leg and left lower extremity symptoms were not causally related to any back condition, work-related, congenital, degenerative, or otherwise. Dr. Bartko further opined that if plaintiff's left leg and left lower extremity symptoms were causally related to his 11 January 2001 injury, then he would have been experiencing pain in his lower lumbar region rather than in his upper lumbar region. At the conclusion of the examination on 26 September 2001, Dr. Bartko released plaintiff from his care, finding that he had reached maximum medical improvement, and assigning a three percent (3%) permanent partial disability rating to his back. Regarding a return to work, Dr. Bartko opined that plaintiff was capable of returning to sedentary or light duty work with restrictions as far as his back condition was concerned. However, Dr. Bartko noted that plaintiff's left leg and left lower extremity symptoms were the most important factor in his being able to return to work, and opined that he was uncertain as to whether plaintiff could return to sedentary or light duty work with those problems.
12. After being released by Dr. Bartko, the evidence of record indicates that plaintiff did not seek medical treatment regarding his left leg and lower left extremity symptoms or back condition, and made no request, formal or informal, to be seen by a physician until the filing of his Industrial Commission Form 33 Request for Hearing on 6 February 2002. Prior to the filing of Plaintiff's Form 33, defendant filed an Industrial Commission Form 24 on 28 November 2001, asserting that plaintiff's disability was no longer related to his compensable injury of 11 January 2001. Defendant's Form 24 was denied by the Order of former Special Deputy Commissioner Matthew Harbin on 30 January 2002, on the grounds that plaintiff was still under work restrictions related to his compensable injury. Defendant then filed its own Industrial Commission Form 33 Request for Hearing on 18 February 2002.
13. Regarding his medical history, plaintiff testified at the hearing before Deputy Commissioner Houser that he had not experienced problems with his low back or left leg or left lower extremities prior to the incident giving rise to this claim. However, prior to working for defendant-employer, plaintiff sustained a left knee injury that resulted in cartilage being removed from that knee. Plaintiff has also undergone a carotid artery surgery, and has been diagnosed with hypertension. Additionally, medical records reflect that in 1992, plaintiff fell off a roof, sustaining a lumbar spine injury, and that plaintiff reported swelling in his feet as early as March 1994.
14. Upon the Order of Deputy Commissioner Houser, plaintiff underwent an independent medical examination by Dr. Mark Roy on 8 January 2003. Dr. Roy's office note from that date indicates that plaintiff reported pain radiating down his back and left leg, as well as numbness in his left foot, and swelling in his hands and feet. Dr. Roy also reviewed plaintiff's prior radiological studies, and noted that these tests indicated that plaintiff had a congenitally small spinal canal, with degenerative changes and lateral recess narrowing secondary to facet arthropathy at multiple levels of his spine. Based upon his examination and review of records, Dr. Roy diagnosed plaintiff as having lumbar spondylosis, and recommended a new MRI. Dr. Roy further opined that if the MRI results were positive, he would recommend a discography in an attempt to identify a level that could be repaired. Additionally, Dr. Roy opined that conservative management has not helped plaintiff recover from his ailments.
15. On the issue of causation, Dr. Roy opined that plaintiff's left leg and left lower extremity symptoms were causally related to his 11 January 2001 injury by accident. Dr. Roy explained his causation opinion, stating that the original incident was an acute injury that essentially sprained facet joints at one level of plaintiff's spine, resulting in low back pain. Additionally, Dr. Roy explained that plaintiff's facet joints permanently damaged a nerve root in a level of his spine that was resulting in the lower left extremity symptoms. However, Dr. Roy admitted during his deposition that he has no objective proof that a nerve root was damaged in the 11 January 2001 incident.
16. In this matter, plaintiff asserts that Dr. Bartko's that medical opinions should be given little weight in part because of what he contends was a non-consensual, ex parte communication with Dr. Bartko by defendant, and the Full Commission concurs. On 1 August 2002, counsel for defendant set a correspondence by facsimile to Dr. Bartko's office regarding the 2 August 2002 examination that included three written interrogatories defendant requested Dr. Bartko to answer. The credible evidence of record establishes that when counsel for defendant transmitted the correspondence and interrogatories to Dr. Bartko that counsel for plaintiff was simultaneously sent copies of the same, and that those copies were received. The fact defendant never spoke directly to Dr. Bartko is irrelevant, the damage had already been done.
17. Based upon the credible evidence of record, the Full Commission finds that the communications by defendant with Dr. Bartko on 1 August 2002 was an ex parte communication. As such, any opinions rendered by Dr. Bartko based upon that examination were tainted and were those given subsequent to that date. The opinions of Dr. Bartko after August 1, 2002 are not accepted by the Full Commission.
18. Regarding the causation opinions given in this matter, the Full Commission gives greater weight to the opinions given by Dr. Roy, than the opinions of Dr. Bartko and Dr. Kritzer. The primary reason for this finding is despite the extensive treatment history Dr. Bartko had with plaintiff following his 11 January 2001 injury, the Full Commission finds plaintiff's relationship with Dr. Bartko was so compromised by defendant's communication that the opinions of Dr. Bartko following the communication should be excluded from the evidence of record.
19. On 25 September 2001, plaintiff was terminated from his position with defendant. At the hearing before Deputy Commissioner Houser, Ms. Dunman testified that it was defendant's policy to terminate an employee due to their unavailability for work for six consecutive months for a work-related injury. At the time of his termination, plaintiff remained under work restrictions, but had not returned to light duty or rehabilitative employment.
20. On 7 November 2001, defendant filed an Industrial Commission Form 60 regarding plaintiff's 11 January 2001 work-related injury. Pursuant to the Form 60, defendant has paid indemnity benefits in the amount of $344.00 per week for the period of 19 February 2001 through the present. This Form 60 was not filed within the time period required by N.C. Gen. Stat. §97-18(d).
21. On 11 January 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. As the result of his 11 January 2001 injury by accident, plaintiff sustained an injury to his back and left leg.
22. As the result of his 11 January 2001 injury by accident, plaintiff was unable to earn any wages in any employment for the period of 19 February 2001 through 26 September 2001 and is entitled to ongoing compensation for that period of time.
23. Given that plaintiff had worked the fifty-two weeks prior to his injury, the Act mandates the use of the first method under N.C. Gen. Stat. § 97-2(5) for calculating his average weekly wage and corresponding compensation rate. Pursuant to the Industrial Commission Form 22 Wage Chart stipulated to by the parties, plaintiff's average weekly wage on 11 January 2001 was $547.69, yielding a compensation rate of $365.12. To date, plaintiff has been receiving total disability benefits at a rate of $344.00, making the difference with his actual compensation rate to be $21.12 per week. Plaintiff is entitled to this difference of $21.12 for the period of his work-related disability, 19 February 2001 through 26 September 2001.
24. The Full Commission finds defendant's ex-parte contact with Dr. Bartko was improper. The defendant's actions justify the exclusion of any opinions, records or testimony of Dr. Bartko following defendant's improper communication with Dr. Bartko on 1 August 2002. The Full Commission hereby excludes the testimony, correspondence and medical records of Dr. Bartko after 1 August 2002.
25. The Full Commission finds plaintiff's relationship with Dr. Bartko was so compromised by defendant's communication that plaintiff can no longer continue as plaintiff's treating physician. The Full Commission approves Dr. Roy as plaintiff's treating physician.
26. For failing to timely file its Industrial Commission Form 60 and Form 22, defendant is subject to the imposition of a sanction in the amount of $250.00 to be paid to the Industrial Commission. Defendant is instructed to make the check payable to the North Carolina Industrial Commission and forward the payment to Accounts Receivable at the Industrial Commission address.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Given that plaintiff had worked the fifty-two weeks prior to his injury, the Act mandates that the first method under N.C. Gen. Stat. §97-2(5) for calculating his average weekly wage and corresponding compensation rate be used to calculate his average weekly wage. Pursuant to the Industrial Commission Form 22 Wage Chart stipulated to by the parties, plaintiff's average weekly wage on 11 January 2001 was $547.69, yielding a compensation rate of $365.12. N.C. Gen. Stat. § 97-2(5).
2. The opinions of Dr. Bartko are excluded after August 1, 2002 as a result of the improper ex parte contact. Salaam v. N.C. Department ofTransportation, 122 N.C. App. 83, 468 S.E.2d 536 (1996), disc reviewimprovidently allowed, 345 N.C. 94, 468 S.E.2d 536 (1996); Porter v.Fieldcrest Cannon, 133 N.C. App. 23, 514 S.E.2d 517 (1999).
3. On 11 January 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). As the result of his 11 January 2001 injury by accident, plaintiff sustained an injury to his back. Id. However, based upon the credible lay and medical evidence of record, plaintiff's left leg and lower left extremity symptoms are not the natural result of, or causally related to his 11 January 2001 injury by accident. Id.
4. As the result of his 11 January 2001 injury by accident, plaintiff is entitled to have defendant pay total disability compensation at the rate of $365.12 per week for the period of 19 February 2001 through 26 September 2001. N.C. Gen. Stat. § 97-29. To date, plaintiff has been receiving total disability benefits at a rate of $344.00, and is therefore entitled to the difference of $21.12 for the period of his work-related disability. N.C. Gen. Stat. §§ 97-2(5); 97-29.
5. Plaintiff is entitled to be paid permanent partial disability compensation for the three percent (3%) rating assigned to his back. N.C. Gen. Stat. § 97-31(23).
6. As the result of his 11 January 2001 injury by accident, plaintiff is entitled have defendant pay for all related medical expenses incurred. N.C. Gen. Stat. § 97-25.
7. Defendant's actions in this matter were improper, but not based upon stubborn, unfounded litigiousness, therefore, plaintiff is not entitled to the award of attorney's fees as a sanction pursuant to N.C. Gen. Stat. § 97-88.1.
8. Neither party is entitled to an award of attorney fees in this matter. N.C. Gen. Stat. § 97-88.1.
9. For failing to timely file its Industrial Commission Form 60 and Form 22, defendant is subject to the imposition of a sanction in the amount of $250.00 to be paid to the by check payable to the North Carolina Industrial Commission and forward the to Accounts Receivable at the Industrial Commission address.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay for all related medical expenses incurred as a result of his 11 January 2001 injury by accident, including treatment for plaintiff's left leg.
2. Defendant shall pay plaintiff temporary total disability benefits at a weekly rate of $365.12 per week from 11 January 2001 and continuing until further order of the Commission or plaintiff returns to full time employment subject to the attorney fee awarded herein.
3. Dr. Roy is approved as plaintiff's primary care physician.
4. Defendant shall pay to plaintiff permanent partial disability compensation for the three percent (3%) rating assigned to his back.
5. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, subject to the credit in defendant's favor.
6. For failing to timely file its Industrial Commission Form 60 and Form 22, defendant is subject to the imposition of a sanction in the amount of $250.00 to be paid to the by check payable to the North Carolina Industrial Commission and forward the to Accounts Receivable at the Industrial Commission address.
7. Defendant shall bear the costs.
This the __ day of April 2004.
 S/_________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_________________ BUCK LATTIMORE CHAIRMAN
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER