* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission and are subject to and bound by the provisions of the Workers' Compensation Act.
2. The Commission has jurisdiction over the parties and of the subject matter.
3. An employer-employee relationship existed between plaintiff and defendant-employer at the time of plaintiff's injury.
4. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
5. On January 14, 2005, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, resulting in injuries to his left knee and his left shoulder. Defendants accepted the compensability of plaintiff's claim through the filing of an Industrial Commission Form 60 on April 7, 2005.
6. On all relevant dates, plaintiff's average weekly wage for this claim was $922.67, resulting in a compensation rate of $615.14 per week.
7. As a result of his compensable injury, plaintiff sustained an 11% permanent partial disability rating to his left arm. This rating was paid pursuant to an Industrial Commission Form 21 that was approved on April 6, 2006. Additionally, as a result of his compensable injury, plaintiff sustained a 10.5% permanent partial disability rating to his left leg. This rating was paid pursuant to an Industrial Commission Form 26 that was approved on October 12, 2006.
8. Plaintiff returned to work for defendant-employer in his prior position as an over-the-road truck driver. Plaintiff's job requires him to climb into the cab and trailer of his truck, using hand holds and steps built into the truck. Plaintiff climbs into the cab of his truck between *Page 3 
five and seven times per day. There are two outside steps on the cab and the third step places him inside the cab. Plaintiff climbs into the trailer approximately one to two times per week. Most of the time when he enters the trailer, he is walking from a dock into the truck. The cab and the trailer floor are each approximately four feet above the ground.
9. The parties stipulated to a packet consisting of 394 pages of exhibits that was admitted into the record before the Deputy Commissioner and marked as stipulated exhibit (1). This packet includes the Pre-Trial Agreement, Industrial Commission Forms, and plaintiff's medical records.
10. Subsequent to the submission of Contentions and proposed Opinion and Awards to the Deputy Commissioner, counsel for defendants submitted a cover letter with an affidavit regarding plaintiff's allegation of defendants' improper contact with Dr. Dunaway. The Deputy Commissioner admitted these documents into the record as defendants' exhibit (1).
11. The issues before the Full Commission are whether plaintiff is at substantial risk for the necessity of future medical compensation related to his compensable injury and whether plaintiff is entitled to payment of additional future medical benefits related to his compensable injuries beyond the two year period set forth in N.C. Gen. Stat. §97-25.1.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. After his admittedly compensable injury on January 14, 2005, plaintiff initially received medical treatment at OccMed, which referred him to Charlotte Orthopaedists and Dr. Yates Dunaway. Dr. Dunaway is board certified in orthopaedic surgery and approximately half *Page 4 
of his practice involves knee injuries.
2. Dr. Dunaway examined plaintiff, confirmed that he sustained a torn left quadriceps tendon and recommended surgery. Plaintiff's tendon had not pulled away from the bone but had torn in two above the area of attachment to the bone. On January 17, 2005, Dr. Dunaway performed surgery in which he drilled three holes in the patella and sutured the tendon to the patella. Following surgery, plaintiff's left knee was placed in an immobilizer. During his post-operative recovery period, plaintiff's left knee initially improved. As of June 3, 2005, plaintiff reported having no problems with his knee and that his range of motion and strength were improving.
3. On August 4, 2005, plaintiff asserted that his left knee had stopped improving and he reported a "bone-on-bone" feeling. Dr. Dunaway conducted isokinetic testing, which is designed to provide information regarding improvement in muscle strength. Dr. Dunaway did not conduct any post-surgical x-rays or MRIs. According to Dr. Dunaway, the results of the isokinetic testing revealed some lack of effort and that plaintiff's injured leg was approximately 13.8 % stronger than his uninjured leg in some daily living activities. However, Dr. Dunaway also testified that although the results of the last isokinetic testing were somewhat inconsistent, the results were consistent with the symptoms plaintiff reported, specifically that his left knee gave way at times.
4. Dr. Dunaway testified that throughout his postoperative treatment of plaintiff, he found no adhesions in plaintiff's knee and no evidence of supra patellar adhesions. However, Dr. Dunaway also testified that because the adhesions may be inside the knee joint, such adhesions would not be readily visible. Additionally, Dr. Dunaway opined that plaintiff will not need future medical treatment for his left knee. *Page 5 
5. At his deposition, Dr. Dunaway indicated plaintiff's status as a workers' compensation claimant could possibly affect the outcome of his case from a medical standpoint. Dr. Dunaway further opined that workers' compensation claimants may not do as well in recovery due to some secondary motivations. However, because plaintiff has returned to work, Dr. Dunaway found that plaintiff did not have any secondary gain issues regarding return to work. On the issue of causation, Dr. Dunaway indicated that he would give respect to the opinions of physicians who led seminars given by the American Academy of Orthopaedic Surgeons (AAOS). Dr. Dunaway also testified that the "best of the best" and the "preeminent faculty" lead the AAOS seminars he attends.
6. Dr. Kevin P. Speer is board certified in orthopaedic surgery and has practiced orthopaedic medicine for 15 years. During this 15 year period, Dr. Speer has treated thousands patients with knee and shoulder injuries. Dr. Speer lectures on various orthopaedic topics, is a frequent AAOS lecturer and has been published extensively in his field.
7. On December 8, 2005, Dr. Speer first examined plaintiff as part of an independent medical evaluation, focusing primarily on plaintiff's left shoulder and left knee. As part of this evaluation, Dr. Speer obtained a history from plaintiff, reviewed his prior medical records, performed a physical examination, took new x-rays, and made a determination of disability. Dr. Speer confirmed that plaintiff had previously sustained a left quadriceps tendon rupture. Based upon Dr. Dunaway's operative report, Dr. Speer determined that the quadriceps tendon injury was repaired non-arthroscopically.
8. Dr. Speer determined that post-operatively, plaintiff's distal quadriceps tendon was adhesed down to the femur, an uncommon complication with his type of injury. He explained that sometimes post-operatively, knee flexion and bending is limited to augment the *Page 6 
healing process. When the flexion is limited post-operatively, extra scar tissue can develop between the top part of the knee joint and can result in the adhesion or attachment of the quadriceps tendon to the femur. As a result, the use of the knee is limited due to the abnormal movement of the tendon and knee. This adhesion can then result in weakness, giving way, pain, and stiffness. Dr. Speer opined that plaintiff's quadriceps tendon adhesion to the kneecap is permanent and will require additional medical treatment, including surgery.
9. Dr. Speer conducted x-rays of plaintiff that revealed evidence of joint damage and arthritis. Dr. Speer opined that plaintiff's injury and initial surgery, along with his physical difficulties thereafter, directly led to and influenced his patellofemoral arthritis.
10. Dr. Speer reviewed plaintiff's job duties and stated that they would increase plaintiff's symptoms, would make progression of his arthritis more likely and would make it more likely that plaintiff would require a knee arthroplasty in the future.
11. Dr. Speer testified that to a reasonable degree of medical certainty that there is a substantial risk that plaintiff will need future medical treatment for his knee.
12. The Commission gives more weight to the opinions of Dr. Speer than those of Dr. Dunaway and finds by the greater weight of the medical evidence that there is a substantial risk that plaintiff will need future medical treatment for his left knee.
13. Plaintiff asserts that prior to Dr. Dunaway's deposition, counsel for defendants had ten minutes of what was termed "conference time" with Dr. Dunaway. This assertion is based upon the contents of Dr. Dunaway's deposition invoice. However, based upon the credible evidence of record, the Commission finds that counsel for defendants did not engage inex parte communications with Dr. Dunaway prior to his deposition.
 * * * * * * * * * * * *Page 7 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Pursuant to Workers' Compensation Rule 408, an injured employee may make a claim for additional medical compensation either by using a Form 18M or by making a written request to the Industrial Commission. Plaintiff made a written request to the Industrial Commission for additional medical compensation pursuant to N.C. Gen. Stat. § 97-25.1
and Industrial Commission Rule 408 by filing his amended Form 33 on September 11, 2006, stating that the parties could not agree concerning plaintiff's need for additional medical compensation pursuant to N.C. Gen. Stat. § 97-25.1.
2. A Form 33 filed with the Industrial Commission indicating plaintiff's need for additional medical treatment pursuant to N.C. Gen. Stat. § 97-25.1 is sufficient to serve as a written request for additional medical compensation. Fontenot v. Ammons SpringmoorAssociates, 176 N.C. App. 93, 625 S.E.2d 862 (2006).
3. There is a substantial risk that plaintiff will need future medical treatment for his left knee. N.C. Gen. Stat. § 97-25.1.
4. Because there is no credible evidence of record upon which to conclude that counsel for defendants engaged in ex parte communications with Dr. Dunaway prior to his deposition, defendants are not subject to sanctions including having Dr. Dunaway's deposition, or portions thereof, excluded. See, Porter v. Fieldcrest Cannon, 133 N.C. App. 23,514 S.E.2d 517 (1999); Salaam v. N.C. Department of Transp.,122 N.C. App. 83, 468 S.E.2d 536 (1996), disc. review improvidentlyallowed, 345 N.C. 94, 468 S.E.2d 536 (1996).
 * * * * * * * * * * * *Page 8 
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 A W A R D
1. Defendants shall pay for all reasonable and necessary medical compensation to plaintiff for as long as such benefits are necessary, including treatment recommended by Dr. Speer. This award shall not be subject to the time limitations set forth in N.C. Gen. Stat. § 97-25.1.
2. Defendants shall pay the costs.
This 24th day of September, 2007.
 S/_______________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
S/_________________ DIANNE C. SELLERS COMMISSIONER
S/________________ PAMELA T. YOUNG CHAIR *Page 1