***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Hall with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between Plaintiff-Employee and Defendant-Employer North Carolina A T University and Key Risk Management Services was the insurer on the risk on the date of injury on or about June 18, 2008.
5. On or about June 18, 2008, Plaintiff contends he suffered an injury to his right hand and arm by reason of accident, interruption of the work routine and/or occupational disease. Defendants have denied liability for the claim
6. Plaintiff's average weekly wage will be determined by a Form 22 and supporting wage documentation to be submitted at the time of the hearing before the Deputy Commissioner.
7. Parties have stipulated to the introduction of medical records, I.C. forms, and employment information.
8. Plaintiff's issues for hearing:
 a. Did Plaintiff suffer a compensable injury by accident, interruption of the work routine or occupational disease on or about June 18, 2008 while he was employed by North Carolina A T State University?
 b. If so, was Plaintiff disabled as a result of the alleged injury?
 c. To what benefits, if any, is Plaintiff entitled for the compensable injury? *Page 3 
 d. Should Defendants be required to pay late penalties, sanctions, and attorney's fees for unjustifiably denying Plaintiff's claim and/or medical treatment, and not paying benefits on a timely basis?
 e. What is the proper average weekly wage?
9. Defendants' issues for hearing:
 a. Whether Plaintiff developed a compensable occupational disease during the course of his employment with Defendant-Employer.
 ***********
The following were marked and received into evidence as:
 EXHIBITS
1. Stipulated Exhibit 1 — IC forms, medical records, and employment information.
2. Plaintiff's Exhibit 1 — Work order summaries.
3. Plaintiff's Exhibit 2 — Residence hall floor plans.
4. Plaintiff's Exhibit 3 — Maintenance work orders.
5. Defendant's Exhibit 1 — Plaintiff's answers to Defendants' first set of interrogatories.
6. Defendant's Exhibit 2 — Plaintiff's recorded statement.
 *********** EVIDENTIARY MATTERS
Plaintiff objects to the deposition of Dr. Frank J. Rowan due to ex parte contact between Defendants and the doctor on October 17, 2008 when Defendants provided Dr. Rowan with a job site analysis completed by Mr. Bill McClure and requested that he render an opinion regarding causation following his review of the report. Defendants initiated this communication without *Page 4 
Plaintiff's permission and without affording Plaintiff an opportunity to participate in the job site analysis or discuss the analysis with Dr. Rowan. Non-consensual, ex parte communications between defendants and plaintiff's treating physician are prohibited. Salaam v. N.C. Department of Transportation,122 N.C.App. 83, 468 S.E.2d 536 (1996), disc. rev. improvidentlygranted, 345 N.C. 494, 480 S.E.2d 51 (1997). The proper remedy for ex parted communication is to strike the treating physician's deposition testimony. Evans v. Young-Hinkle Corp.,123 N.C. App. 693, 696, 474 S.E.2d 152, 153-54 (1996). Dr. Rowan's testimony was ex parte communication and thus shall be stricken from the record.
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 36 years old at the time of the hearing before the Deputy Commissioner, and he worked as a maintenance mechanic for Defendant-Employer beginning on October 30, 2007. Plaintiff's job duties as a maintenance mechanic consist of general carpentry in the construction and alteration of floors, stairways, doors and screens, assembling furniture, hanging wall paper, plumbing, and painting, among other things.
2. On June 3, 2008, Plaintiff began to install doorstops with co-workers and temporary workers. Mr. Melvin Davis worked with Plaintiff installing doorstops. Defendant-Employer also hired two temporary employees who assisted in the preparation of doorstops and in using the hammer drill to install doorstops. Mr. Davis and the temporary employees assisted Plaintiff in completing the doorstops in Village three, four, and six. *Page 5 
3. Plaintiff used the hammer drill and a cordless hand drill to install doorstops. He also performed other manual labor tasks involving hand tools during this same time period.
4. Plaintiff stated that he was by himself on most days and that he had a temporary employee with him named "James" on some days. James did some of the drilling on the second and third floors on a few days.
5. Plaintiff estimated that he installed approximately 30 to 40 doorstops a day from June 3, 2008 to June 18, 2008. However, the work order summaries marked as Plaintiff's Exhibit 1 show that Plaintiff was taken off the doorstop job to perform other maintenance work orders on some days.
6. Plaintiff testified that it took approximately two minutes to drill two and one-half inch to two inch deep holes in concrete with the hammer drill. Ergonomic evaluator William McClure timed himself and some other employees of Defendant and found that it took only three to four seconds to drill one hole of the required depth in the concrete. Based on 40 doorstops per day at eight seconds of drilling per doorstop, Plaintiff would have only been drilling approximately five and one-half minutes a day. Furthermore, the drilling was intermittent due to preparation and clean up that Plaintiff was required to perform before gathering his tools and moving on to the next doorstop in that room or a different room. Plaintiff's testimony as to the amount of drilling he performed is not found to be credible. However, even if it were, that testimony reflects that Plaintiff performed only 80 minutes of intermittent drilling spread out over an approximately eight hour day.
7. On June 30, 2008, Plaintiff went to his primary care physician, Dr. Charles Frazier, with complaints of numbness in his right arm. A July 11, 2008 nerve conduction study *Page 6 
performed at Guilford Neurologic, showed evidence of right carpal tunnel syndrome of moderate severity.
8. On August 28, 2008, Plaintiff went to PrimeCare and was diagnosed with right arm pain. The medical note from that visit indicates that Plaintiff was using a hand drill constantly for two weeks and that Plaintiff's right hand had been numb since June 3, 2008. Plaintiff returned to work with restrictions. On September 9, 2008, Plaintiff returned to the doctor with no change in his pain.
9. On October 7, 2008, Plaintiff attended an authorized visit with Dr. Rowan of Guilford Orthopaedic and Sports Medicine Center. Dr. Rowan recommended a repeat EMG/NCV study because of the atypical features.
10. On July 31, 2009, Plaintiff presented to Dr. Gary G. Poehling at Comp Rehab in Winston-Salem. Dr. Poehling diagnosed Plaintiff with carpal tunnel syndrome of the right upper extremity.
11. During his deposition, Dr. Poehling opined that Plaintiff's carpal tunnel syndrome was the result of his use of a hammer drill to install doorstops at work. Dr. Poehling acknowledged that he did not ask Plaintiff how many doorstops he installed, or how long the work lasted, and that he never saw a written job description or video of Plaintiff's job duties. Furthermore, Dr. Poehling was not aware that Plaintiff held a second job in which he used a weed-eater or other vibrating tools. Thus, Dr. Poehling's opinion was based on inaccurate descriptions from Plaintiff regarding the amount of his exposure to the hammer drill.
12. In light of the foregoing the Full Commission finds that Dr. Poehling's testimony is speculative and not reliable for determining the issue of causation in this case. Accordingly, the competent, credible evidence in the record fails to support a finding that Plaintiff's job placed *Page 7 
him at a greater risk of developing bilateral carpal tunnel syndrome than the general public and does not prove an occupational disease.
13. Mr. McClure determined that Plaintiff was exposed to the hammer drill three to four minutes per day and concluded that Plaintiff's work tasks did not reflect risk factors above the acceptable risk for the development of musculoskeletal and/or cumulative trauma disorders. Mr. McClure based his conclusion on the amount of time Plaintiff was using the hammer drill and the fact that Plaintiff was performing other jobs.
14. Mr. Andrew Graham's job site analysis report is missing some key facts, including how much exposure Plaintiff had to the hammer drill.
15. Defendant-Employer had reasonable grounds to defend this claim. *Page 8 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff has not suffered an occupational disease as defined by the Workers' Compensation Act and has failed to show that he had greater exposure to carpal tunnel syndrome than the general public and that his injury was caused by a condition which is characteristic of, and peculiar to his employment. Jarvis v. FoodLion, Inc., 134 N.C. App. 363, 367, 517 S.E.2d 388, 391 (1999);Booker v. Duke Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979).
2. The evidence presented by Plaintiff is insufficient to carry his burden of proving the existence of an occupational disease which entitles him to compensation or any form of workers' compensation benefits. Gay v. J.P. Stevens Co.,79 N.C. App. 324, 330-31, 339 S.E.2d 490, 494 (1986).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each side shall bear its own costs.
This the 30th day of June, 2010.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ STACI MEYER COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1